## A95A2828. HEAD v. THE STATE.
### (469 SE2d 406)

ANDREWS, Judge.

Marion Head appeals the judgment entered on a jury verdict finding him guilty of armed robbery, kidnapping, aggravated assault, and attempted armed robbery. Head raises the general grounds that the evidence was insufficient to support the verdict and also that the trial court erred in not directing a verdict of acquittal. The evidence at trial, viewed in the light most favorable to the jury's verdict, was as follows.

The charges against Head stem from two robberies, both of Roy Aaron, who owned a package store and also ran a check cashing business. At the first robbery, in January 1994, Aaron had just returned to his store from the bank and had a large amount of cash with him for his check cashing business. As he was getting out of his truck, a man, later identified as Fred Cornell, pointed a gun at him and stole the bags of money, approximately $40,000.

The second robbery was in June 1994, under similar circumstances. Aaron had just returned from the bank with money for his check cashing business when he was held up by two men, later identified as Quillian Demon Smith and Carl Martel Sullivan. As Aaron was getting out of his truck, the two men forced him into his store at gunpoint. Once inside, they began taping his wrists and then asked him where the money bags were. Aaron told them the bags were still in the truck and one of the men went out to get them. He came back and said there were cops outside. Sullivan then put the gun to Aaron's head and walked him out the door. Aaron testified that when the police told Sullivan to put the gun down, Sullivan said, "No, I'm going to waste this mother." Aaron then went limp and dropped to the ground and the deputies were able to convince Sullivan to drop the gun. In the meantime, Smith ran out the door and police eventually caught him hiding in a warehouse.

When questioned by investigators, both Smith and Sullivan stated that Marion Head planned both robberies. But, upon being called to testify at trial, Smith refused to answer any questions and

Sullivan gave testimony inconsistent with his prior statements to investigators. The audiotapes of their statements to investigators were then played for the jury. Fred Cornell, the person who committed the first robbery, refused to implicate Head when questioned at trial.

There was additional testimony from a bondsman who stated that Head was one of a group who came to him to post bond for Smith. Also, Head's former girl friend testified that the gun taken from Sullivan was one she had reported stolen on the day of the robbery. The State also called a man who lived near Aaron's shop, who stated that he saw a red car circle around the area on the morning of the January robbery. His description of the car was similar to the one given by Smith and Sullivan of the car belonging to Head.

Head testified in his own defense. He admitted that Smith's family asked if they could borrow money from him for Smith's bond, but denied having anything to do with either of the crimes.

1. The standard of review of the denial of a motion for directed verdict of acquittal is that from *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Harvey v. State*, 212 Ga. App. 632, 634 (2) (442 SE2d 478) (1994). After reviewing the record and in light of the testimony as outlined above, we find there was sufficient evidence to warrant the denial of a directed verdict and to support the verdict of the jury. "The weight of the evidence and credibility of witnesses are questions for the triers of fact, and this court passes on the sufficiency of the evidence, not its weight." (Punctuation omitted.) *Johnson v. State*, 204 Ga. App. 277, 279 (3) (419 SE2d 118) (1992). Accordingly, we find that a rational trier of fact could find from the evidence adduced at trial proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, supra.

2. Head also claims the trial court erred in denying his motion for a continuance. In moving for the continuance, defense counsel did not state that he did not have adequate time to prepare, but only that he was concerned that his client was not properly dressed and he had been unable to talk with him recently.

"A refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard." (Citations and punctuation omitted.) *Pope v. State*, 256 Ga. 195, 207 (345 SE2d 831) (1986). We find no abuse of discretion by the trial court in the instant case.

3. Next, Head asserts as error the trial court's statements to Smith that there would be sanctions taken against him if he refused to testify. Head does not cite, and we do not find, any authority for his contention that this was error. This enumeration is without merit.

In the same enumeration, Head claims that the trial court erred in allowing into evidence the tape of Smith's statement to investigators because it was hearsay. He contends that this was inadmissible as

a prior inconsistent statement because Smith refused to testify at trial. We agree that the admission of this taped statement was error.

In *Barksdale v. State*, 265 Ga. 9 (453 SE2d 2) (1995), the Supreme Court held that when a witness refuses to testify, a previously taped statement is not admissible as prior inconsistent testimony. *Barksdale*, supra at 12. The Supreme Court also found in that case that admitting the taped statement violated the defendant's right of confrontation because the declarant was not subject to cross-examination, the taped statement was not admissible under any other exception to the hearsay rule and, since it was a statement of a co-defendant while in custody, the court could not hold that it was made under circumstances showing particular guarantees of trustworthiness. *Barksdale*, supra at 12-13. But, in *Barksdale* the declarant was called to the stand after the playing of his taped statement for purposes of cross-examination and when asked by the defense attorney if he were going to continue to refuse to answer questions, the declarant replied that he was. *Barksdale*, supra at 11.

Here, Smith readily answered questions put to him on cross-examination by defense counsel after the playing of the taped statement. The constitutional requirements of the confrontation clause are satisfied when the hearsay declarant is present at trial and subjected to unrestricted cross-examination. *United States v. Owens*, 484 U. S. 554, 560 (108 SC 838, 98 LE2d 951) (1988). "The confrontation clause guarantees the defendant in a criminal trial the general right to cross-examine the witness, that being the principal means by which the believability of a witness and the truth of his testimony are tested." *Henderson v. State*, 182 Ga. App. 513, 517 (356 SE2d 241) (1987), rev'd on other grounds, 257 Ga. 618 (362 SE2d 346) (1987). There is no violation of this Sixth Amendment right if the witness is present and available for cross-examination. *Henderson*, supra at 517.

The inquiry then becomes whether the hearsay testimony was harmful as a matter of law. We find that it was not. "This court has recognized the general rule that in order to justify a new trial or reversal, the trial court's ruling must be both erroneous and harmful to the appellant." *Glass v. State*, 235 Ga. 17, 19 (218 SE2d 776) (1975). The test for harmful error is whether it is "highly probable" that the error contributed to the judgment. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). In determining whether hearsay testimony is harmful, this Court has found "[i]nadmissible hearsay which is received over objection does not require a new trial if it appears that the evidence could not have affected the verdict because other evidence by a witness with immediate and personal knowledge is sufficient to establish the fact in question." *Glass*, supra at 19. Here, there was sufficient evidence by a witness with personal knowledge from which the jury could find Head planned the robberies without Smith's

taped testimony. As discussed above, Sullivan, who did testify at trial, also told investigators that Head planned the crimes. Accordingly, we find the admission of Smith's statement to be harmless error.

4. Lastly, Head contends it was error for the trial court to allow the jurors to read a transcript of the tapes while the tapes were being played. This issue has already been decided adversely to Head in *Guess v. State*, 264 Ga. 335 (443 SE2d 477) (1994). As long as a proper foundation is laid and certain safeguards are utilized, the jury is permitted to have transcripts of the taped conversation. Id. at 336. Here, the foundation was properly laid and the court carefully instructed the jury as to the use of the transcripts. Accordingly, this enumeration of error is without merit.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1996.

*J. Terry Brumlow*, for appellant.
*T. Joseph Campbell, District Attorney, Rebecca B. Tierce, Assistant District Attorney*, for appellee.