## A01A0052. SMITH v. THE STATE.
(552 SE2d 528)

BLACKBURN, Chief Judge.

Following a jury trial, Danny Smith, Sr. appeals his convictions for driving under the influence to the extent that he was less safe,[1] driving with an unlawful blood alcohol concentration,[2] and speeding.[3] Smith now argues that: (1) his convictions for DUI must be reversed because the State failed to accommodate his request for an independent blood test and (2) his conviction for speeding must be reversed because the trial court erred by admitting the readout of a radar gun without establishment of the proper foundation for such evidence. For the reasons set forth below, we affirm Smith's conviction for speeding, and we reverse Smith's convictions for DUI less safe and driving with an unlawful blood alcohol concentration.

Viewing the evidence in the light most favorable to the verdict, the record shows that Smith was stopped for speeding by Sergeant David Knight at 12:53 a.m. on September 26, 1998. Smith passed by Knight's motorcycle, and Knight immediately detected, by visual estimation, that Smith was traveling in excess of the 35-mph speed limit. A radar gun reading made at that point indicated that Smith

---

[1] OCGA § 40-6-391 (a) (1).

[2] OCGA § 40-6-391 (a) (5) provides that a person shall not drive a moving vehicle while "[t]he person's alcohol concentration is 0.10 grams or more at any time within three hours after such driving."

[3] Smith was also convicted for committing an open container violation and reckless driving. He does not appeal these convictions.

was going 78 mph. Knight turned his motorcycle around and pursued Smith, and, during this pursuit, Knight, using his own speedometer, paced Smith at speeds exceeding 55 mph.

After Smith was finally stopped, Knight asked him to step out of his truck. At the scene, Knight requested that Smith assent to an Intoxilyzer 5000 breath test at the station, and he read the Georgia implied consent notice to Smith. After consenting to the State test, Smith stated that he wanted an independent blood test in addition to the State test. Knight subsequently informed Smith that the test would be his responsibility — that he would have to choose who would perform the test and pay for its cost.

Following his arrest, Smith was taken to the police station, where he submitted to the State's breath test at 1:42 a.m. The results showed that Smith's blood alcohol level was between 0.198 and 0.207. After the State test was administered, Smith posted bond and was released at approximately 3:00 a.m. His request for an independent blood test was never accommodated.

1. Smith argues that his convictions for DUI must be reversed, contending that the results of his Intoxilyzer 5000 test should have been suppressed due to the State's failure to accommodate his request for an independent blood test. We agree.

OCGA § 40-6-392 (a) (3) provides that a person who undergoes a chemical test at the request of a law enforcement officer is entitled to have a qualified person of his own choosing administer an additional test. In general, law enforcement officers have a corresponding duty not to refuse or fail to allow an accused to exercise the right to have an independent test. And, if an individual who requests such a test is prevented from receiving it by the State, the results of the State-administered test cannot be used as evidence unless the failure to obtain the test is justified. *State v. Button;*[4] see OCGA § 40-6-392 (a) (3).

> OCGA § 40-6-392 (a) (3) allows one accused of driving under the influence of alcoholic beverages the right to have a chemical analysis of his blood and urine by a qualified person of his own choosing, and there is a corresponding duty on the part of law enforcement officers not to refuse or fail to allow the accused to exercise that right. While it is not the officer's duty to insure the performance of an independent test, he cannot prevent a defendant from exercising his right to such a test. The statute also states that the justifiable failure or inability to obtain an additional test shall not pre-

---

[4] *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992).

clude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer. It is incumbent on the trial court to determine whether the failure or inability to obtain the additional test is justified. In making that determination, the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks an independent test.

(Citations and punctuation omitted.) *State v. Vandervoort.*[5]

In this case, it is undisputed that Smith requested an independent blood test after he assented to take the State's breath test. As such, the State had a duty to comply with Smith's request unless justified in not doing so. The record, however, does not reveal any grounds for such justification. Knight testified that he did not comply with Smith's request because he expected him to bond out of jail and go get his own test. However,

[t]here is no requirement under the law that a suspect bond out before being entitled to an independent test. The only requirement is that the suspect first agree to take a state-administered test or the independent test is waived. And if the suspect does agree to the state-administered test, then the police officer must make " 'a reasonable effort to accommodate the accused who seeks an independent test.' (Cit.)" *State v. Button*, [supra at 674]. See *State v. Brodie*;[6] *State v. Vandervoort*, [supra at 73 (1)]. Obtaining bond is not a prerequisite to that reasonable accommodation.

*State v. Terry.*[7]

Therefore, because the State has failed to show an appropriate justification for its failure to accommodate Smith's request for an independent test, the results of the State Intoxilyzer 5000 test should have been suppressed, and Smith's conviction for driving with an unlawful blood alcohol concentration must be reversed.

Concomitantly, Smith's conviction for driving under the influence to the extent that he was less safe must also be reversed because the introduction of the Intoxilyzer readout must be considered harmful. "The test for harmful error is whether it is 'highly probable' that the error contributed to the judgment." *Head v. State.*[8]

---

[5] *State v. Vandervoort*, 215 Ga. App. 72-73 (1) (449 SE2d 617) (1994).

[6] *State v. Brodie*, 216 Ga. App. 198, 199-200 (2) (453 SE2d 786) (1995).

[7] *State v. Terry*, 236 Ga. App. 248, 250 (511 SE2d 608) (1999).

[8] *Head v. State*, 220 Ga. App. 281, 283 (3) (469 SE2d 406) (1996).

In this case, it is highly probable that the evidence that Smith's blood alcohol level was above the legal limit contributed to the jury's determination that he was less safe to drive at the time that he was stopped. See, e.g., *Richards v. State*.[9]

The dissent argues that, because Smith bonded out of jail with 40 minutes left to get a blood test, "[a]ny failure of the police to accommodate the request while Smith was still in custody did not cause Smith's failure to get the test and . . . was harmless." The dissent further states that this "case might be different if Smith had shown that he was unable to obtain a test in the remaining time despite diligent attempts to do so."

This reasoning is problematic for several reasons. First, it inappropriately shifts the burden to the defendant to show a lack of accommodation of his request. That is not the proper burden of proof in these cases. Pursuant to OCGA § 40-6-392 (a) (3), the State has an affirmative duty to accommodate a request for an independent blood test. The burden is on the State to accommodate this right and to justify any failure to do so. The justification for a lack of accommodation must be proven by the State, not the defendant. Raw speculation that the officer thought the defendant was going to be released on bond does not justify the State's failure to meet its statutory obligation.

In cases such as this one, the defendant's ultimate release on bond does not justify the State's failure to accommodate defendant's request for an independent test at the time he was entitled to it, after he had taken the State's test and requested same. In turn, justification exists only if the State had a reasonable basis under the totality of the circumstances for failing to meet its statutory obligation. Under the dissent's argument, the State could always circumvent the rights of defendants by simply bonding them out in less than three hours, whether or not the defendant was still drunk or his car had been impounded. Protective rights of defendants and the corresponding duty on the State were not intended to be avoided based on the speculation of police officers, not factually supported by the record.

Second, the dissent's reasoning infuses considerable uncertainty into the interpretation of OCGA § 40-6-392 (a) (3), thereby undermining both its purpose and application. In this case, the dissent concludes, without any supporting evidence, that 40 minutes was enough time for Smith to have his blood test performed. There is, however, no evidence in the record showing that 40 minutes, in fact, would have been enough time. As such, the State failed to carry its burden of establishing that its failure to meet its obligation to accom-

---

[9] *Richards v. State*, 269 Ga. 483 (500 SE2d 581) (1998).

modate Smith's request was justified.

Moreover, the analysis employed by the dissent begs the question: How much time is enough? Forty minutes? Thirty-nine minutes? Thirty-eight minutes? Who has the burden of proof? What evidence must be shown to justify the State's unquestioned failure to accommodate a defendant's request? Distance from the jail to the facility of choice? Traffic patterns from the applicable time and date? The speed of admission of patients to the testing facility? Was the defendant's vehicle impounded? Was the defendant still drunk at the time of his release? Could the defendant have legally driven at that time? Would the defendant have been guilty of DUI had he driven immediately after being released on bail? Did the defendant have transportation to get to the hospital?

Under the dissent's analysis, what was once a simple means of protecting a defendant's rights in a straightforward manner becomes a convoluted parade of uncertainties based on temporal circumstance. The language of the statute establishes the burdens in this regard, and this court should not attempt to excuse the State for its failure to meet its obligation. At the time the officer failed to meet the State's obligation to provide Smith with an independent test, he did not know that Smith was going to be released on bail. Neither does the record reflect that he considered all of the other factors outlined above. Therefore, a review of the totality of the circumstances reveals that the officer failed to provide Smith with the independent test to which he was entitled, on his sheer speculation that Smith would bond out in time to obtain an independent test. The relevant statute clearly contemplates that the defendant is in relatively the same state of intoxication at the time of his independent test as he was at the time of the State's test. If this were not the case, there would be no value to having an independent test, as its only purpose is to disprove the State's contentions. It does not seem reasonable that the legislature would have intended for OCGA § 40-6-392 (a) (3) to be interpreted as the dissent contends it should be.

2. Smith contends that his conviction for speeding must be reversed, arguing that the trial court improperly admitted testimony without the proper foundation regarding the readout of a radar gun used to track his speed.

Pretermitting the efficacy of Smith's argument, the admission of the radar gun results would be harmless in this case. Sergeant Knight testified that, by his visual estimation, Smith was traveling at a rate in excess of the speed limit, and, once he began following Smith, Knight verified this fact by clocking him with the speedometer on his motorcycle. Therefore, the results of the radar gun readout were cumulative, and, even if its admission was erroneous, it would

not require reversal of Smith's conviction for speeding. *Taylor v. State.*[10]

*Judgment affirmed in part and reversed in part. Andrews, P. J., Johnson, P. J., Eldridge, Miller and Mikell, JJ., concur. Pope, P. J., concurs in part and dissents in part.*

POPE, Presiding Judge, concurring in part and dissenting in part.

I fully concur with Division 2 of the majority opinion but dissent to Division 1.

It is true that after a defendant requests an independent chemical test of his blood the police officer must make " 'a reasonable effort to accommodate the accused who seeks an independent test.' [Cit.]" *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992). And it is also the law that the officer may not mislead the defendant by stating or implying that bonding out of jail is a prerequisite to the independent blood test. *State v. Terry*, 236 Ga. App. 248 (511 SE2d 608) (1999). But if the defendant is released from his arrest with sufficient time remaining to obtain such a test, there can be no harm as a matter of law from such a statement.

In this case, Smith was stopped for speeding at about 12:53 a.m. After failing the field sobriety tests and the alco-sensor test, Smith was arrested and read his implied consent rights. Smith agreed to take the state-administered breath test and then stated that he also wanted a blood test. At the station, Smith finished the breath test on the Intoxilyzer 5000 at 1:42 a.m. Smith bonded out of jail at about 3:00 a.m. and was picked up by family members. Therefore, Smith had approximately 40 or more minutes left to get an independent blood test that would be relevant to the allegations against him. See OCGA § 40-6-391 (a) (5) (person shall not drive a moving vehicle while "[t]he person's alcohol concentration is 0.10 grams or more at any time within three hours after such driving. . . ."). The case might be different if Smith had shown that he was unable to obtain a test in the remaining time despite diligent attempts to do so. But there is no such evidence in this case.[11]

Smith had been properly instructed that he could get such a test and that it would be up to him to select someone to perform the test and pay for it himself. If he still wanted to have the test done, he had 40 minutes to do it after he left the jail. Any failure of the police to accommodate the request while Smith was still in custody did not cause Smith's failure to get the test, and therefore, it was harmless. This distinguishes *Terry*. In that case, the defendant chose not to

---

[10] *Taylor v. State*, 205 Ga. App. 84 (1) (421 SE2d 104) (1992).

[11] "Colloquy among counsel and the court, although included in the record, is not sufficient to make a proper record of facts before this court for purposes of satisfying appellant's burden." *Banks v. State*, 230 Ga. App. 881, 883 (3) (a) (497 SE2d 821) (1998).

take the state-administered test in part, possibly, because she had been misled about whether bonding out of jail was a prerequisite to an independent test. The misinformation affected her choice. Here, the misinformation, if any, did not affect Smith's choice — he wanted an independent test, and it did not affect whether he could get one — he had over forty minutes to do so.

This outcome does not depend on shifting the burden from the State to show reasonable accommodation of the defendant's request — the State failed to meet that burden. But, during the three-hour period in question, the defendant was in police custody for part of the time and in his own custody for the rest. While he was in police custody, the police had a duty to accommodate his request. While he was in his own custody, he was free to decide whether he wanted to take the test, and the police obviously had no control over him. And, ultimately, it is not the officer's duty to insure that the independent test is taken. *Thornhill v. State*, 202 Ga. App. 826 (415 SE2d 473) (1992). The time that the defendant is free to do as he chooses cannot be ignored. And, the State surely should not have the burden of showing that the defendant did not diligently seek his own blood test after he was released. Otherwise, a defendant who bonds out of jail with plenty of time to obtain his own test but who changes his mind and chooses to skip the test and go home could nevertheless prevent introduction of the State's blood alcohol test if an officer failed to reasonably accommodate his request for an independent test while he was in police custody.

DECIDED JULY 16, 2001.

*Gregory W. Holt, Laurens C. Lee*, for appellant.
*A. Robert Tawse, Jr., Solicitor-General, Arthur J. Creque, Assistant Solicitor-General*, for appellee.