### A02A0635. LADOW v. THE STATE.
(569 SE2d 572)

PHIPPS, Judge.

Terri Ladow appeals her conviction for driving under the influence (DUI) to the extent it was less safe for her to drive,[1] contending that the trial court erred in admitting the results of her State-administered blood test because her request for an additional, independent blood test was not accommodated. The trial court's decision to allow the evidence was based on its determination that Ladow did not request such a test. That determination was error. We therefore reverse Ladow's DUI conviction.

The facts are undisputed. At approximately 2:15 a.m. on Febru-

---

[1] Ladow does not appeal her conviction for failure to maintain lane.

ary 3, 2001, a law enforcement officer saw the truck that Ladow was driving weave across the centerline and stopped it. Based on his subsequent observations, including Ladow's bloodshot eyes, the odor of alcohol coming from her person, the results of her alco-sensor test, and her performance on several field sobriety tests, he arrested Ladow for DUI.

The officer then began to read to Ladow the implied consent notice, stating, "It's your Georgia Implied Consent Notice for suspects over the age of twenty-one. Okay. Which you are." Ladow told the officer, "I've already heard all that." The officer said to Ladow, "Okay. Well, I've got to still read you your Georgia Implied Consent Notice whether you've heard it. Yes, I do. I do." Ladow stated, "I know you do." The officer proceeded, "Georgia law requires you to submit to a state administered chemical test of your blood, breath, urine or other bodily substances for the purpose of determining if you're under the influence of alcohol or drugs." Ladow interrupted, "I want a blood test." The officer then stated, "Hold on, please." Ladow responded, "Okay." The officer then read the remainder of the notice,

> If you refuse this test, your Georgia driver's license or privilege to drive on the highways of this State will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of zero point one zero grams or more, your Georgia driver's license or privilege to drive on the highways of this State may be suspended for a minimum period of one year. After first submitting to the required State tests, you are entitled to additional chemical tests of your blood, breath, urine or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the State administered chemical test of your blood under the Implied Consent Law? Yes or no? Yes or no?

Ladow responded, "Yes." A State-administered chemical test of her blood revealed an alcohol concentration of 0.10 grams. At no point was there an additional, independent test of Ladow's blood.

Ladow moved in limine to exclude the results of the State's blood test on the grounds that her request, "I want a blood test," was for an additional, independent blood test and that it had not been accommodated. At the motion hearing, the officer testified that he believed that when Ladow said she wanted a blood test, she was referring to the State-administered chemical test because he had "just got done reading what the State required of her." The trial court determined

that given the totality of the circumstances, the officer reasonably believed that Ladow's request was related only to State-administered tests and denied the motion. At a bench trial, the results of the State-administered blood test and the officer's observations that led to Ladow's arrest were admitted. Ladow was found guilty of DUI to the extent she was a less safe driver.

On appeal, Ladow contests the denial of her motion in limine, arguing that the trial court erroneously ruled that her statement, "I want a blood test," did not constitute a request for an additional, independent blood test. A trial court's application of the law to undisputed facts is subject to de novo appellate review.[2]

OCGA § 40-6-392 (a) (3) provides that a person who is accused of DUI and who undergoes a chemical test at the request of a law enforcement officer has the right to have a qualified person of her own choosing administer an additional test.[3] Law enforcement officers have a corresponding duty not to refuse or fail to allow an accused to exercise that right.[4] "If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against [her] unless the failure to obtain the test is justified."[5]

An accused's right to have an additional, independent chemical test or tests administered is invoked by some statement that reasonably could be construed, in light of the circumstances, to be an expression of a desire for such test.[6] The State argues that because Ladow made her request for a blood test immediately after the officer had read a portion of the implied consent notice regarding State-administered tests, "it was reasonable to expect that [Ladow's] comments were in response to the information she had just been presented and not to material that had yet to be read to her." The State also points out that Ladow did not again ask for a blood test.

OCGA § 40-5-67.1 places upon an arresting officer the duty to read to the accused the applicable implied consent notice as set forth therein. We note that each such notice ends with the question, "Will you submit to the state administered chemical tests of your ([officer] designate[s] which tests) under the implied consent law?"[7] None, however, asks the accused whether she wants an additional, independent chemical test. And none specifies to the accused any requirements for requesting that test — linguistically, temporally, or other-

---

[2] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] *Smith v. State*, 250 Ga. App. 583, 584 (1) (552 SE2d 528) (2001).

[4] Id.

[5] *State v. Button*, 206 Ga. App. 673, 674 (426 SE2d 194) (1992).

[6] See *Church v. State*, 210 Ga. App. 670, 671 (1) (436 SE2d 809) (1993).

[7] OCGA § 40-5-67.1 (b) (1), (2), (3).

wise. We do not believe that the legislature intended the notices to set up pitfalls for an accused who desires to have an additional, independent chemical test administered.[8] We therefore cannot place upon an accused the burden of uttering words unspecified, yet more particularized than those uttered here: "I want a blood test."

Furthermore, we cannot accept the State's position that the officer reasonably construed Ladow's statement as referring to a certain type of State-administered test. The only type of test Ladow had a right to designate was an additional, independent test.[9] And contrary to the State's position, the officer himself conceded understanding that the selection of the type of State-administered test rested with him.

We find of no consequence the fact that the officer had not yet read that portion of the notice concerning an additional test or the fact that Ladow did not again request a blood test. We have already held that "an accused's right to have an independent test *performed* does not attach until the State performs its test, but . . . the right to *request* an independent test may be exercised when the accused is read [her] informed consent rights."[10] We see no reason why that rule should not apply here. The record shows that the officer was on notice that Ladow presumably knew of her right to an additional test because she told him at the outset of the notice that she had "already heard all that" and wanted a blood test.

We conclude that Ladow's statement, "I want a blood test," sufficiently articulated her desire to have an additional, independent test such that a law enforcement officer reasonably would have understood her statement to be a request for one.[11] The officer thus had a duty to comply with Ladow's request unless justified in not doing so. But the record reveals that the officer did not do so *only* because he did not consider Ladow's statement to be such a request. He therefore made no effort to accommodate it. The State has failed to show an appropriate justification for its failure to accommodate Ladow's request.

---

[8] See *State v. Leviner*, 213 Ga. App. 99, 101 (3) (a) (443 SE2d 688) (1994) (in enacting that statute, the legislature intended to impose additional implied consent notice requirements at the time the law enforcement officer requested the person to submit to a chemical test).

[9] OCGA §§ 40-5-55 (a); 40-5-67.1 (a).

[10] (Emphasis in original.) *Norfleet v. State*, 196 Ga. App. 548, 550 (396 SE2d 237) (1990); see also *State v. White*, 188 Ga. App. 658, 659 (373 SE2d 840) (1988); *Duckett v. State*, 206 Ga. App. 651 (426 SE2d 271) (1992); *Ballew v. State*, 206 Ga. App. 631, 633 (426 SE2d 254) (1992).

[11] Compare *Church*, supra (stopped driver's question to law enforcement officer, "If you were going to arrest me would you take like a blood test; still you would put me in jail and I would still go to jail for DUI, right?" which was asked during field sobriety tests did not constitute adequate request for an additional, independent blood test).

Because the State, without appropriate justification, failed to accommodate Ladow's request, the trial court erred in denying her motion to exclude the results of the State-administered test.[12] It is highly probable that the evidence that Ladow's blood alcohol level exceeded the legal limit contributed to the trial court's determination that she was less safe to drive.[13] Thus, we cannot find the error harmless.[14]

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 11, 2002 —
RECONSIDERATION DENIED JULY 26, 2002 ▮▮▮▮▮▮▮▮▮▮▮

*Whitmer & Law, George H. Law III*, for appellant.
*Leslie C. Abernathy, Solicitor-General, Jason R. Samuels, Michael T. Saul, Assistant Solicitors-General*, for appellee.

---

[12] See *Smith*, supra at 585.
[13] See id. at 585-586.
[14] See id.