### A02A1494. KITCHENS v. THE STATE.
(574 SE2d 451)

POPE, Senior Appellate Judge.

Defendant Mary Cloyd Kitchens was convicted following a bench trial of driving under the influence of alcohol to the extent that she was a less safe driver, failure to maintain lane, and driving with an expired license. She appeals, arguing that the trial court erred in admitting the results of the state-administered breath test into evidence because the implied consent warning read to her by the arresting officer was misleading, inaccurate, and coercive and that the evidence was insufficient to support her conviction for "less safe" DUI.[1]

As is relevant to this appeal, the transcript shows the following: Officer Greg Holcomb of the Villa Rica Police Department testified that on December 7, 2000, he received a call to be on the lookout for a white Ford Explorer with Alabama license plates traveling east on I-20. He spotted a vehicle matching that description and, after verifying the license plates and following the vehicle a "little way," activated his blue lights and flashing headlights. The videocamera inside his patrol car was also activated. Officer Holcomb testified that he decided to activate his lights because the vehicle was "weaving over the roadway, crossed the fog line, also crossed the centerline," and that he observed the vehicle weave on numerous occasions. He continued to follow the vehicle, which did not stop until he pulled beside it and activated his siren.

Officer Holcomb requested license and insurance information from the driver of the vehicle, defendant Kitchens. Officer Holcomb testified that the driver's license was issued by the State of Alabama and had expired. The videotape shows that Officer Holcomb remarked to Kitchens that her eyes were bloodshot and that the odor of alcohol was "extremely heavy, extremely heavy," and that she replied that she had just "taken some Listerine." Officer Holcomb

---

[1] Kitchens does not challenge her convictions for failure to maintain lane and driving with an expired license.

then requested that Kitchens perform several field sobriety tests, based on his observations of her driving, odor of alcohol, and bloodshot eyes. Officer Holcomb testified and the videotape of the stop shows that Kitchens stumbled against the side of her vehicle as she was exiting and that she could not correctly recite the alphabet. Officer Holcomb also administered an Alco-Sensor test, which registered positive for alcohol. Officer Holcomb then placed Kitchens under arrest for driving under the influence.

Officer Holcomb read Kitchens Georgia's Implied Consent Warnings. While he was reading the warning, Officer Holcomb informed Kitchens that if "the results indicate an alcohol concentration of 10 grams or more," her Georgia driver's license or privilege to drive on Georgia highways may be suspended for one year. After Officer Holcomb completed the warning, he asked Kitchens if she would submit to the state's test, and if she understood what he had just stated to her. Kitchens responded, "I'm not sure what you just said." Officer Holcomb then attempted to explain the notice and informed Kitchens that her "license to drive in the State of Georgia" would be suspended if she refused to take the test, and "[i]f the results indicate ten or more," her license may be suspended. After this explanation, Kitchens again told Officer Holcomb she was not sure if she understood "exactly what you said," and subsequently indicated, "you have very much confused me." Officer Holcomb informed Kitchens she had two choices, to take the test or not take the test, in which case "you're automatically charged with DUI and your license [is] going to be suspended." Kitchens then indicated that she would take the test.

The results of the state's breath test indicated Kitchens' blood alcohol level was 0.199. The trial court denied Kitchens' motion to exclude the results of the test and found her guilty of driving under the influence to the extent that she was a less safe driver.

1. Kitchens first argues that the trial court erred by denying her motion to exclude the results of the state-administered test because the implied consent warning was misleading, inaccurate, and coercive.

As stated above, the videotape of the stop and arrest shows that when Officer Holcomb read the implied consent warning, he overstated the legal limit indicating that it was 10 grams instead of 0.10 grams of alcohol concentration. The record further shows that after Kitchens indicated she did not understand the implied consent, Officer Holcomb again incorrectly advised Kitchens that the legal limit was 10 grams instead of 0.10 grams.

Moreover, Officer Holcomb also gave Kitchens incorrect information concerning the consequences if she refused to take the test. The transcript shows that Officer Holcomb initially correctly informed Kitchens, who held an Alabama driver's license, that her Georgia

driver's license *or* privilege to drive on the highways of this state would be suspended for one year if she did not submit to the state's test, but during his subsequent explanation of her rights stated, "[s]o your second choice is to . . . not . . . take that test. And once you do that, you're automatically charged with a DUI and your license [is] going to be suspended." Kitchens then agreed to take the test.

We find the trial court erred in failing to exclude the test results in this case. Because the laws of this state no longer require that the implied consent warning be read exactly so long as the substance of the notice remains unchanged, OCGA § 40-5-67.1 (b) (3), we must now determine

> whether the notice given was substantively accurate so as to permit the driver to make an informed decision about whether to consent to testing. In *Garrett v. Dept. of Public Safety*, [237 Ga. 413, 415 (2) (228 SE2d 812) (1976),] we recognized that the purpose of the implied consent law is to notify drivers of their rights so that they can make informed decisions. Accordingly, we have suppressed the results of chemical tests where the driver was misinformed of his rights and where that misinformation may have affected his decision to consent. In *State v. Coleman*, [216 Ga. App. 598, 599 (455 SE2d 604) (1995),] for example, we held that suppression was required where an out-of-state driver was wrongly told that he would lose his driver's license if he refused testing. Likewise, we have suppressed evidence of the driver's refusal to consent where that refusal may have resulted from misleading information. In *State v. Terry*, [236 Ga. App. 248 (511 SE2d 608) (1999),] for instance, we affirmed the suppression of evidence of a driver's refusal to take a blood test where police falsely informed her that obtaining bond was a pre-condition to independent testing. We agreed with the trial court that the misinformation was confusing and could have affected the driver's decision to refuse testing.

(Footnotes omitted.) *State v. Becker*, 240 Ga. App. 267, 271 (2) (523 SE2d 98) (1999).

In this case, we cannot say that the substance of the notice given was substantially accurate. When he read the warning and when he explained it to Kitchens, Officer Holcomb substantially altered the substance of the notice by overstating the legal limit of blood alcohol concentration to be 10 grams instead of 0.10 grams. This court has previously recognized that overstatement, as opposed to understatement, of the legal limit of blood alcohol concentration is the type of

misinformation that might cause someone to submit to testing who might otherwise refuse. See *Maurer v. State*, 240 Ga. App. 145, 147 (2) (525 SE2d 104) (1999). The state argues, however, that there is nothing in this case to show that the erroneous overstatement of the legal limit led Kitchens to submit to testing. We find this argument unpersuasive.

> "To accept the State's arguments, we must first find that the [language concerning the legal limit] is superfluous. This we refuse to do. We do not believe substantial compliance means that it is permissible to ignore completely the 'particulars' of the laws of this state or that it is permissible to ignore statutory requirements as long as no harm is shown. 'The . . . requirement is that when the State seeks to prove the violation by evidence of a chemical test, the State has the burden of demonstrating compliance with the statutory requirements.' (Cit.)" *State v. Hughes*, 181 Ga. App. 464, 467 (352 SE2d 643) (1987).

*State v. Causey*, 215 Ga. App. 85, 86 (449 SE2d 639) (1994).

We also find unavailing the state's reliance on *State v. Webb*, 212 Ga. App. 872 (443 SE2d 630) (1994), for the proposition that because Kitchens "was simply confused," no harm has been shown. The notice given in *Webb* was not inaccurate or misleading, and *Webb* does not stand for the proposition that misleading and inaccurate information does no harm as long as the accused demonstrates only general confusion or lack of understanding. As the author of *Webb* subsequently made clear, erroneous and misleading advice requires exclusion of the state's test result. *Allen v. State*, 218 Ga. App. 844, 847 (2) (463 SE2d 522) (1995).

Moreover, even assuming that drastically overstating the legal limit of alcohol concentration had no effect on Kitchens' decision to submit to the state's test, the record discloses a clearer causal connection between the officer misinforming Kitchens about the consequences of her refusal to take the test and her decision to submit to the test. As stated above, Kitchens' decision to submit to the test occurred immediately after Officer Holcomb misinformed her that her driver's license, which was issued by the State of Alabama, would be suspended if she refused to submit to the test. As stated above, we have previously recognized that misinforming the holder of an out-of-state driver's license that refusal to submit to the state's test would result in revocation of the out-of-state license is the type of misleading information which may affect the decision to submit to the test and may require suppression of the test results. "Since the consent was based at least in part on deceptively misleading information con-

cerning a penalty for refusal, which the State was unauthorized to implement, [defendant] was deprived of making an informed choice under the Implied Consent Statute. Accordingly, the test results were rendered inadmissible." *Deckard v. State*, 210 Ga. App. 421, 423 (436 SE2d 536) (1993). See also *State v. Coleman*, 216 Ga. App. 598, 599 (455 SE2d 604) (1995). But see *Rojas v. State*, 235 Ga. App. 524, 527-528 (2) (509 SE2d 72) (1998) (misinformation about consequence of refusal to take the state's test harmless because driver had already refused to take test and misinformation did not coerce driver to change decision and submit to testing). And the fact that the officer initially correctly informed Kitchens that her privilege to drive on the highways of this state as opposed to her out-of-state license would be revoked does not change this result. In *State v. Terry*, 236 Ga. App. at 250, we held that inaccurate and misleading information given in response to questions about the implied consent notice may lead to suppression of the state's test results, even when the accused has previously been given an accurate and complete notice.

Lastly, we also reject the state's argument that admission of the test results did not give rise to harmful error. The trial court, sitting without a jury, specifically relied on the test results in reaching its conclusion that Kitchens was a less safe driver, stating, "[b]ased upon [the] result [of the state's breath test], the court finds beyond a reasonable doubt that she is guilty of the offense charged in that the evidence shows the court that she was a less safe driver. Her blood alcohol level was 0.199 which exceeds the legal limit significantly and the evidence of her driving and personal demeanor revealed that she was less safe to drive." " 'The test for harmful error is whether it is "highly probable" that the error contributed to the judgment.' *Head v. State*[, 220 Ga. App. 281, 283 (3) (469 SE2d 406) (1996)]." *Smith v. State*, 250 Ga. App. 583, 585 (1) (552 SE2d 528) (2001). Because "[i]t is highly probable that the evidence that [Kitchens'] blood alcohol level exceeded the legal limit contributed to the trial court's determination that she was less safe to drive[,] . . . we cannot find the error harmless." (Footnote omitted.) *Ladow v. State*, 256 Ga. App. 726, 730 (569 SE2d 572) (2002). See also *Smith v. State*, 250 Ga. App. at 585-586 (1); *Carthon v. State*, 248 Ga. App. 738, 742 (1) (548 SE2d 649) (2001).

2. Kitchens also challenges the sufficiency of the evidence. Having reviewed the transcript and videotape of the stop, we find the properly admitted evidence was sufficient to show beyond a reasonable doubt that Kitchens was guilty of less safe DUI.

Officer Holcomb testified and the videotape shows that Kitchens was weaving repeatedly to both the centerline and the fog line prior to the stop, and that she did not immediately pull over when Officer Holcomb activated his flashing lights. Officer Holcomb stated to

Kitchens that the odor of alcohol was "extremely heavy" and that her eyes were bloodshot. The officer testified and the videotape discloses that Kitchens stumbled up against her vehicle as she exited, and Officer Holcomb testified that he had her walk to the back of the vehicle and lean against it because she could not maintain her balance very well. The videotape also shows that at one point during the stop Kitchens held on to the back of the vehicle as she took a few steps toward the side. Additionally, Kitchens twice failed one of the field sobriety tests, and she registered positive on an Alco-Sensor test. Officer Holcomb also testified that, based on his experience, Kitchens was a less safe driver. It is well established that police officers may offer opinion testimony that a defendant was a less safe driver. *Byrd v. State*, 240 Ga. App. 354 (523 SE2d 578) (1999); *Waits v. State*, 232 Ga. App. 357, 358 (1) (501 SE2d 870) (1998). The evidence in this case was sufficient to authorize a rational trier of fact to conclude that Kitchens was under the influence of alcohol to the extent that she was a less safe driver. *Johnson v. State*, 249 Ga. App. 29, 30 (1) (546 SE2d 922) (2001); *Byrd v. State*, 240 Ga. App. at 354. "Thus, although we determined in Division 1 of this opinion that [Kitchens'] conviction for driving under the influence . . . must be reversed, she may be retried for that offense because a rational [trier of fact] may find the properly admitted evidence is sufficient for conviction." *Carthon v. State*, 248 Ga. App. at 743 (2).

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 18, 2002.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney*, for appellee.