A07A0793. BROOKS v. THE STATE.
(647 SE2d 328)

JOHNSON, Presiding Judge.

Jerome Brooks was charged with driving under the influence of alcohol to the extent that it is less safe for the person to drive,[1] driving

---

with a blood alcohol concentration above 0.08 grams,[2] and impeding the flow of traffic.[3] Following a bench trial based upon stipulated facts, Brooks was convicted of driving under the influence with an unlawful blood alcohol concentration of 0.145 grams in violation of OCGA § 40-6-391 (a) (5). A nolle prosequi was entered on the other two charges. He appeals from the judgment of conviction, alleging that the trial court erred in denying his motion to suppress breath test results because the officer did not accommodate his request for an independent chemical test. We find no error, and affirm the convictions.

The entire encounter between the officer and Brooks prior to the time they arrived at the jail was caught on tape. Based upon the tape, the testimony, and the stipulation of both parties, the following facts are not in dispute: On December 18, 2005 at approximately 4:00 a.m., a police officer observed Brooks impeding the flow of traffic on I-285 by driving below the 40 mile per hour minimum speed limit. After stopping Brooks, the officer approached the vehicle, spoke with Brooks, and noticed a strong odor of alcoholic beverage. Brooks denied drinking. The officer had Brooks step out of the vehicle. He conducted field sobriety evaluations. He determined that Brooks' performance was "pitiful." The officer placed Brooks under arrest and told Brooks he was being charged with DUI. Brooks immediately exclaimed, "No, please, can I get a blood test?" The officer then made his first attempt to read Brooks the implied consent notice. He was unable to successfully read the entire notice because Brooks constantly interrupted, attempting to convince the officer that he was not driving under the influence. The officer then read the implied consent notice another time. Again he was constantly interrupted by Brooks, who said he did not understand what was being read.

Brooks was placed in the patrol car, and the officer read the implied consent notice a third time. When the officer read the portion of the implied consent notice informing Brooks he had a right to an independent chemical test, Brooks repeated ". . . my own expense . . . qualified personnel of my own choosing. . . ." The officer repeatedly asked Brooks for a "yes" or "no" answer to whether he would submit to a state-administered breath test. Brooks responded by asking "and that is another Breathalyzer?" The officer responded, "It is a state-administered breath test, yes." After the officer again asked Brooks for a "yes" or "no" answer, Brooks asked, "Do I have to take a Breathalyzer or a blood alcohol content?" The officer replied that they

---

[2] OCGA § 40-6-391 (a) (5).
[3] OCGA § 40-6-184 (a) (1).

were the same thing, and the officer made clear that he was request-ing a breath test. Brooks then responded that he understood every-thing that was asked of him. A short time later, Brooks asked, "Do I have to take a Breathalyzer? I'd prefer to take a blood test or urine test." The officer replied, "It's not your choice of what the state requests." Brooks responded by stating that he was nervous, and he understood. In response, the officer told Brooks that he could decide whether to take the breath test once they arrived at the jail. Brooks replied by stating, "I will take it."

The facts are somewhat in dispute as to whether, once at the jail, the officer actually asked Brooks if he would like an independent chemical test. The officer testified that he did ask Brooks if he would like an independent chemical test, to which Brooks answered, "No, it's useless now." Brooks testified he has minimal recollection of what transpired at the jail, and no memory of the officer asking if Brooks would like an independent chemical test. Brooks does not deny that the officer asked him if he would like an independent chemical test. Brooks merely states that he had no recollection of it.

On appeal from a ruling on a motion to suppress, we construe the evidence most favorably to affirming the trial court's factual findings and judgment.[4] However, when the evidence is uncontroverted and no question of credibility is presented, the trial court's application of the law to the facts is subject to de novo appellate review.[5] Here, the only material facts even marginally in dispute are what was said or not said at the jail. Therefore, the trial court's findings of fact and credibility as to what transpired at the jail must be adopted unless clearly erroneous.[6] Any evidence that supports the trial court's findings will be sufficient to uphold its ruling.[7] Here, the officer's testimony shows that he specifically asked Brooks whether he wanted an independent chemical test. Brooks does not deny this testimony. The evidence is therefore sufficient to support the trial court's ruling.

Based upon two decisions from this Court, *State v. Gillaspy*[8] and *Ladow v. State*,[9] the trial court determined that the comments made by Brooks could not be reasonably construed as a request for an independent chemical test. In the context of implied consent, an accused's right to have an additional, independent chemical test administered is invoked by some statement that could reasonably be construed, in light of the circumstances, to be an expression of a

[4] *State v. Sledge*, 264 Ga. App. 612, 613 (591 SE2d 479) (2003).

[5] Id.

[6] *Davis v. State*, 278 Ga. 305, 306 (1) (602 SE2d 563) (2004).

[7] Id.

[8] 270 Ga. App. 111 (605 SE2d 835) (2004).

[9] 256 Ga. App. 726 (569 SE2d 572) (2002).

desire for an additional, independent chemical test.[10] In adhering to this principle, courts are guided by the circumstances surrounding an alleged request, not simply the semantics of the alleged request.[11] Thus, the defendant's comments regarding a blood test do not occur in isolation, but are viewed in light of the surrounding circumstances.[12]

Here, Brooks asked the question, "Do I have to take a Breathalyzer or a blood alcohol content?" The officer replied that they were the same thing. Brooks argues that he is clearly distinguishing between a blood test and a Breathalyzer test. However, in light of the surrounding circumstances, even if Brooks did question whether he had to take a test of his blood or a test of his breath, the question was in response to the officer's repeated questions of whether Brooks would submit to a state-administered chemical test of his breath. This indicates that Brooks was referring to the type of test the state was going to administer.[13] Furthermore, Brooks' request to either take a urine test or a blood test in place of the Breathalyzer was followed by a response by the officer that it was not for Brooks to choose the type of test the state requests. Brooks claimed he understood. Under the circumstances, it seems clear, and the trial court found, that Brooks was not requesting an independent blood test at his own expense and personal choosing, but for the officer to designate either a state-administered blood or urine test in place of the breath test.

Brooks' reliance on *McGinn v. State*[14] and *Ladow v. State*[15] is misplaced. In these cases, the defendants were clearly asking for an independent test of their blood at their own expense and by qualified personnel of their choosing in light of the surrounding circumstances. Here, Brooks was asking for a blood test in response to the officer's request to submit to the state-administered breath test, a clear indication that Brooks was attempting to designate the state-administered test, not request an independent test.

There is evidence supporting the ruling of the trial court that Brooks' request could not reasonably be construed to be an expression

---

[10] Id. at 728.

[11] *Gillaspy*, supra at 112.

[12] *Ladow*, supra at 728.

[13] See *Anderton v. State*, 283 Ga. App. 493, 494-495 (1) (642 SE2d 137) (2007) (defendant's request of a blood test in response to officer's request was not a request for an independent test, but an attempt to designate the state-administered test).

[14] 268 Ga. App. 450 (602 SE2d 209) (2004) (defendant's request for a blood test independent of the implied consent warning and her prior knowledge of the law indicated that she was requesting an independent chemical test, not designating the state-administered test).

[15] *Ladow*, supra at 728 (defendant's multiple requests for an independent blood test were clear).

of a desire for an additional, independent chemical test at his own expense and by qualified personnel of his own choosing.[16] Accordingly, the trial court did not err in denying Brooks' motion to suppress.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED MAY 31, 2007.

*Head, Thomas, Webb & Willis, Thomas J. Thomas*, for appellant.
*Shawn E. LaGrua, Solicitor-General, Mirna G. Andrews, Assistant Solicitor-General*, for appellee.