## A11A1340. AVERY v. THE STATE.

(716 SE2d 729)

ADAMS, Judge.

Following a traffic stop, appellant Jesse Trotter Avery was charged with per se DUI pursuant to OCGA § 40-6-391 (a) (5), failure to maintain lane, and driving with a suspended license. Avery filed a motion in limine and to suppress arguing, inter alia, that the results of the Intoxilyzer 5000 should be excluded because the State did not comply with his request for additional testing. Avery also filed a special demurrer to the driving on a suspended license charge, and the prosecutor agreed that charge should be dismissed. After his motion to suppress and motion in limine were denied, he was tried before the probate court sitting without a jury and convicted of failure to maintain lane and driving under the influence. He appealed to the superior court, and his conviction was affirmed. He filed a timely notice of appeal to this Court, contending that his motion to suppress should have been granted, that the results of the field sobriety tests should have likewise been excluded because the officer performing the tests failed to give him *Miranda* warnings prior to the administration of those tests, and his right of cross-examination was unduly restricted.

1. Avery first argues that the results of the Intoxilyzer 5000 should have been excluded because his request for an independent chemical test was not accommodated. *Ladow v. State*, 256 Ga. App. 726, 728-729 (569 SE2d 572) (2002).[1]

Deputy Michael Cloud of the Dade County Sheriff's Department testified at both the motion to suppress hearing and at trial. According to his testimony at the motion to suppress hearing, he stopped Avery after he observed him failing to maintain his lane.

---

[1] "If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against [him] unless the failure to obtain the test is justified." (Citation and punctuation omitted.) *Ladow v. State*, 256 Ga. App. at 728.

Deputy Cloud testified that he smelled a strong odor of alcoholic beverage coming from the vehicle, so he asked Avery if he had any alcoholic beverages to drink that evening and Avery told him he had not.

After calling dispatch to check Avery's license, which came back as having been suspended by the State of Tennessee, Deputy Cloud had Avery exit the car and asked Avery to blow into an alco-sensor. Avery asked the deputy what it would show if he had one beer to drink, and Deputy Cloud said he did not know but did not pursue the test, opting to perform a series of field sobriety tests instead. Avery then successfully recited his ABCs, although Deputy Cloud said there were some pauses in between letters that to him indicated some confusion. Avery also successfully performed a counting test, although he performed the test one time too many. And according to Deputy Cloud, the HGN test indicated Avery was impaired to some degree.

Deputy Cloud testified that he then informed Avery that he was under arrest for driving with a suspended license and driving under the influence. He placed Avery in his patrol car and read him Georgia's implied consent notice, and Avery agreed to take the State's breath test. Deputy Cloud and Avery then waited in the patrol car for Avery's father to come pick up his car.

After arriving at the detention center, Avery took the State's test, registering 0.080 on the Intoxilyzer 5000. Avery was then turned over to detention officers while Deputy Cloud wrote out the accusations against him.

On cross-examination Deputy Cloud testified that he could not recall if Avery had requested any additional testing. Deputy Cloud further testified that if the videotape of the stop showed that Avery requested more field sobriety testing, then he did not have to comply with that request. After further cross-examination, Deputy Cloud testified that a suspect must first submit to the State's test before he is entitled to have an additional test of his own choosing, and thus if Avery had made the request at the jail after the State-administered breath test, his request would have been accommodated.

After the probate court denied the motion in limine and motion to suppress without explanation, the case proceeded to trial. During the trial, Deputy Cloud testified again concerning why he stopped Avery, and the other events that transpired after the stop. The audio-videotape of the stop was then played for the first time. That tape showed that after Avery was placed under arrest and put in the patrol car, he continued to plead with the deputy to let his parents pick him up instead of arresting him. The audio-videotape also showed that after Deputy Cloud read Avery the implied consent notice, Avery asked the deputy if he was going to let him go if he did

not register 0.080 and then agreed to take the State's breath test. Avery then continued to plead with Deputy Cloud to let his parents take him home and not to charge him with DUI, stating at one point that he passed the field sobriety tests. Deputy Cloud responded that he still had to go to jail on the suspended license and to take the Intoxilyzer test. Avery continued to plead with the deputy and then stated "Give me some more like tests, like please." Deputy Cloud responded that Avery had to take the State's test at the jail. Avery indicated some confusion, asking the deputy "what — what's the state's test" or words to that effect. The deputy replied, "I read you the card."

After the tape was played, Avery's counsel cross-examined the deputy about Avery's request for additional testing, and Deputy Cloud confirmed that he heard what was on the audio-videotape but that he thought it referred to additional field sobriety testing.

Following this testimony, Avery moved for a directed verdict of acquittal on the charge of driving under the influence, again arguing that the results of the Intoxilyzer should have been excluded based on the deputy's testimony that additional tests were requested but not given. In response, the State argued that "it's a . . . stretch to say that at any point in time he could request tests and then this officer is supposed to decipher . . . what that means." Further, the prosecutor argued that Avery "invoke[d] this generalized I'll take more tests before the implied [consent was] even read," and that he agreed to take the State's test after the implied consent warnings were read, took the test, but did not make any request for additional testing after the test was performed. After hearing this argument, the trial court denied the motion for directed verdict without elaboration.

Avery then testified. According to Avery, he asked for "more tests" because he did not trust the State's test since he had passed the field sobriety tests but was arrested for DUI anyway. He further testified that he asked for additional testing, including another breath test, at least twice after he took the State's test at the jail but his request was not accommodated. On rebuttal, Deputy Cloud testified that he did not hear Avery make a request for additional testing while they were at the jail, but that he did not know if a request was made to either of the detention officers who were also present that night.

The trial court subsequently entered an order finding Avery guilty of failure to maintain lane and DUI. Avery appealed to the superior court, arguing that the State had improperly argued that he did not have the right to an independent test because he made his request prior to taking the State's test and that the probate court had incorrectly applied the law in deciding this issue. After a hearing, the superior court denied Avery's appeal, finding that, as to his

request, Avery

> asked Officer . . . Cloud to give him some more tests. The request was made to the officer and was made requesting that the officer perform the tests, specially mentioned a sobriety test. The Court finds that [Avery's] request was not an expression of his desire for an independent chemical or other type of test. In light of the circumstances it could not [be] construed to be an expression of a desire for an additional independent test or tests.

At the outset we note that the audio-videotape clearly shows that Avery made a request for "more tests" approximately seven minutes after he was read his implied consent warnings, although the State, somewhat inexplicably, insisted in both the probate court and the superior court that he made the request before those warnings were read. However, it does not appear that either the probate court or the superior court would have been misled by this misrepresentation, inasmuch as both courts viewed the videotape in which the sequence of events were clearly depicted. Moreover, the probate court sustained Avery's objection to a question posed by the prosecutor that mischaracterized the evidence in this manner. And, although the probate court did not, either orally or in writing, state a basis for its rulings on this issue, it is clear that the superior court based its ruling on the content of the request, not the timing of the request.

Further we note that although it is true that Avery was not entitled to take an independent chemical test until after he completed the State's test, it is not true, as the State also argued below, that only requests made after the completion of the test need be accommodated. As this Court has held, implied consent warnings do not specify to the accused any requirement for requesting an independent chemical test — linguistically, temporally, or otherwise. *Ladow v. State*, 256 Ga. App. at 728-729; see also *McGinn v. State*, 268 Ga. App. 450 (602 SE2d 209) (2004). Rather,

> [a]n accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed — in light of the circumstances — to be an expression of a desire for an additional, independent test. In adhering to this principle, we are guided by the circumstances surrounding an alleged request, not simply the semantics of the alleged request itself.

*State v. Gillaspy*, 270 Ga. App. 111, 112 (605 SE2d 835) (2004). *Brooks v. State*, 285 Ga. App. 624, 626-627 (647 SE2d 328) (2007). Thus, even when requests are similarly or identically worded, different findings on whether an independent test was requested may be compelled depending on the circumstances surrounding the making of the request. Id.; *State v. Gillaspy*, 270 Ga. App. at 112 (trial court erred as a matter of law by not considering circumstances surrounding request); see also *Anderton v. State*, 283 Ga. App. 493, 494-495 (1) (642 SE2d 137) (2007).

In this case, the circumstances show that Avery's primary goal was to get the officer to release him to his father when he arrived instead of arresting him. While that goal could have been accomplished if the deputy agreed to let him take more field sobriety tests and release him if he passed those tests, that immediate goal would not have been accomplished by taking additional chemical tests because that would have required that Avery remain in custody. Moreover, the request was made for more "tests" plural, not an additional "test." And, as the superior court noted, his request was for the deputy to give him more tests, not for an independent test. Further, Avery had just mentioned the field sobriety tests, which he believed did not indicate impairment. And Avery clearly was not focused on any potential tests conducted after he left the scene, as he appeared confused about the state-administered test he was going to take at the jail. Based on these circumstances, we agree that Avery's statement that he wanted "more tests" cannot reasonably be construed as a request for an independent chemical test of his own choosing, and the results of the State-administered test were properly admitted at trial.[2]

2. Avery next contends that the trial court improperly restricted his cross-examination of Deputy Cloud by sustaining the prosecuting attorney's objection interposed during his questioning of the deputy about the margin of error on the Intoxilyzer 5000. However, at the point the objection was sustained, the deputy had already testified twice that he did not recall the margin of error. Thus, even assuming the ruling was in error, it was harmless as the question had already been answered, and it does not appear that anything more was to be gained from the witness concerning his knowledge on that subject.

3. Lastly, we find no merit to Avery's contention that the results of the field sobriety tests should have been suppressed because he

---

[2] The determination of whether Avery also requested additional testing after he took the State's test was for the trial court to determine, as the trier of fact and the arbiter of credibility issues. Obviously, since even the State argued he would have been entitled to those independent tests if he made the request after the administration of the State's test, the trial court determined this issue adversely to him.

was not given *Miranda*[3] warnings prior to the administration of those tests. The record shows that he was not placed under arrest or taken into custody until after those tests were completed, and nothing preceding his arrest occurred which would have required the deputy to inform him of his *Miranda* rights. E.g., *Doyle v. State*, 281 Ga. App. 592, 593 (1) (636 SE2d 751) (2006); *Moody v. State*, 273 Ga. App. 670, 671 (1) (b) (615 SE2d 803) (2005). This enumeration thus also presents no basis for reversal.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED SEPTEMBER 7, 2011 — 

*William D. Cunningham*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Leonard C. Gregor, Jr., Assistant District Attorney*, for appellee.

---

[3] *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SC 1602, 16 LE2d 694) (1966).