## A09A1084. BRADBERRY v. THE STATE.

(678 SE2d 131)

BLACKBURN, Presiding Judge.

Following a jury trial, Eddie Young Bradberry appeals his conviction on one count of rape,[1] three counts of child molestation,[2]

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-6-4 (a).

and two counts of cruelty to children.[3] He challenges the sufficiency of the evidence for the rape conviction and enumerates two evidentiary rulings as error. Discerning no error, we affirm.

Construed in favor of the verdict, *Short v. State*,[4] the evidence shows that beginning when his daughter was ten, Bradberry would enter her bedroom several times a week and would remove his clothes and also remove his daughter's pants and underwear. He would then rub his private part against his daughter's private part until he ejaculated and would also often touch her breasts and buttocks. During each encounter, the daughter would make a demand that Bradberry stop, which demand he ignored, and she would try to pull away, which resulted in his ordering her to stop resisting.

After suffering these encounters for years, the daughter at age 14 tried to tell her mother of such, only to have the mother become angry at her and accuse her of lying. The next morning, Bradberry went a step further during his sexual encounter with his daughter, this time inserting his private part into her private part, causing the daughter pain. Shortly thereafter, he apologized to her for his actions and instructed her to tell no one. When she arrived at school, she informed a counselor of the sexual encounters, which led to police involvement and to a visit to the hospital that same day, where vaginal swabs and blood samples were taken from her. A DNA analysis showed the presence of Bradberry's semen in the daughter's vaginal cavity.

Indicted for rape, aggravated sexual battery, three counts of child molestation (touching her vagina, breasts, and buttocks), and two counts of cruelty to children, Bradberry at trial denied any sexual encounters with his daughter; his counsel argued that the daughter must have found Bradberry's semen in his marital bed on the morning of the outcry and placed that semen in her vagina so as to incriminate him. Acquitting Bradberry of the aggravated sexual battery charge, the jury found him guilty on all other counts. Following the denial of his motion for new trial, he appeals.

1. Bradberry challenges the sufficiency of the evidence for the rape conviction, claiming that the State presented no evidence of force. We disagree.

"A person commits the offense of rape when he has carnal knowledge of[ a] female forcibly and against her will. . . ." OCGA § 16-6-1 (a) (1). *State v. Collins*[5] held that this language requires the

---

[3] OCGA § 16-5-70 (b).

[4] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[5] *State v. Collins*, 270 Ga. 42, 42-43 (508 SE2d 390) (1998), superseded in part by statute as stated in *State v. Lyons*, 256 Ga. App. 377, 378-379 (568 SE2d 533) (2002).

State to show not only that the act was performed without the consent of the female but also that it was performed forcibly, which refers to "acts of physical force, threats of death or physical bodily harm, or mental coercion, such as intimidation." Id. at 43. *Collins* emphasized that "the quantum of evidence to prove force against a child is minimal" and "is shown if the defendant's words or acts were sufficient to instill in the victim a reasonable apprehension of bodily harm, violence, or other dangerous consequences to herself or others." (Punctuation omitted.) Id. at 44-45. "Further, force may be proved by direct or circumstantial evidence. Lack of resistance, induced by fear, is force, and may be shown by the victim's state of mind from her prior experience with the defendant and subjective apprehension of danger from him." (Punctuation omitted.) *Wightman v. State*.[6]

Here, the State first proved force by direct evidence. The daughter specifically testified that Bradberry "force[d her] to have sex with him against [her] will." Although conclusory, such testimony sufficed to show the element of force. See *Haygood v. State*[7] ("[t]he jury heard direct evidence from the victim that [defendant] forced her to engage in sex with him"). Cf. *Jenkins v. State*[8] ("both victims testified that [defendant] forced them to have sexual relations with him").

Second, the State proved force by circumstantial evidence. For four years, Bradberry had forced the daughter to suffer multiple acts of child molestation, despite her demands that he stop and despite her repeated efforts to pull or get away from Bradberry. See *Roberts v. State*[9] (force shown where defendant "continued his sexual advances despite her resistance"). When she finally told her mother of such, her mother disbelieved her and accused her of lying. "Since the victim's outcry regarding the prior molestation incident was . . . ignored, the jury was authorized to find that, from the victim's perspective, resistance . . . in this subsequent incident would have been futile." *Hutchens v. State*.[10] See *House v. State*.[11] Moreover, "[h]er testimony that the intercourse was painful authorized the jury to infer [Bradberry's] sexual act[ was] perpetrated by use of physical force." *Hutchens*, supra, 281 Ga. App. at 612 (1). We decline Bradberry's invitation to overrule this precedent.

---

[6] *Wightman v. State*, 289 Ga. App. 225, 228 (1) (656 SE2d 563) (2008).

[7] *Haygood v. State*, 289 Ga. App. 187, 194 (2) (b) (656 SE2d 541) (2008).

[8] *Jenkins v. State*, 246 Ga. App. 38 (539 SE2d 542) (2000).

[9] *Roberts v. State*, 242 Ga. App. 621, 624 (1) (b) (530 SE2d 535) (2000).

[10] *Hutchens v. State*, 281 Ga. App. 610, 613 (1) (636 SE2d 773) (2006), overruled in part on other grounds, *Schofield v. Holsey*, 281 Ga. 809, 811-812, n. 1 (642 SE2d 56) (2007).

[11] *House v. State*, 236 Ga. App. 405, 408-409 (1) (512 SE2d 287) (1999).

682

The evidence sufficed to sustain the rape conviction.

2. Bradberry argues that the court erred in admitting the testimony of the DNA expert, who identified the semen in the daughter's vaginal cavity as Bradberry's. Specifically, he contends that two lab technicians who participated in the process did not testify at trial, and that therefore he was denied his right of confrontation under the Sixth Amendment. See *Crawford v. Washington*.[12] We discern no constitutional violation.

The DNA expert testified that a technician in her lab microscopically viewed a sample from the vaginal swabs taken from the victim and informed the expert that sperm was present. Because of this information, the DNA expert knew to perform a DNA "differential extraction" on the sample she obtained directly from the vaginal swab, which extraction is used when sperm cells are present (as opposed to a second type of extraction that is used for blood, tissue, or saliva samples). Having extracted that DNA, the expert then used the second type of extraction to determine the DNA of a blood sample taken from Bradberry, which blood sample had been placed on a blood-stain card by a second lab technician. Comparing the DNA information from the two extractions led to the expert's conclusion that the DNA of the sperm cells was the same DNA of the blood sample taken from Bradberry.

Bradberry complains that neither the first lab technician (who expedited matters by informing the expert of the presence of sperm cells so that the expert knew which extraction to perform) nor the second lab technician (who placed some blood from the sample taken from Bradberry onto the blood-stain card) testified, thus depriving him of his right of confrontation as to their actions. However, the testimony of neither technician was required to protect Bradberry's constitutional right of confrontation.

The first technician's observations merely alerted the DNA expert as to the type of DNA extraction she needed to perform on the vaginal swab. This did nothing more than expedite matters for the expert, who without this knowledge would have either (a) microscopically viewed the vaginal swab sample herself to determine what type of extraction to perform or (b) learned immediately upon performing the extraction that the sample contained sperm cells. The crux of the expert's testimony was what the extraction showed — namely, that the sperm cells in the vaginal swab taken from the victim had the same DNA as the blood sample taken from Bradberry.

The second technician did nothing more than place some blood from the sample taken from Bradberry onto a blood-stain card for

---

[12] *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

the ease and convenience of the expert performing the DNA extraction of that blood. *Dunn v. State*[13] held that technicians who prepare samples for testing by the testifying expert need not themselves testify so as to preserve a defendant's right to confrontation, as "this is an issue affecting the reliability and weight of the evidence, not its admissibility." As here, the expert in *Dunn* testified regarding the procedures used to establish that the substance tested was the substance that came from the defendant, and no conclusions from the technicians were submitted to the jury, which sufficed to satisfy any constitutional concerns. Id. at 670-672 (1). Cf. *United States v. Burgos*.[14]

The court did not violate Bradberry's right to confrontation in admitting the testimony of the DNA expert.

3. Bradberry complains that the trial court erred in admitting the victim's testimony that just prior to trial, she had attempted suicide due to the stress caused by the molestation. Bradberry argues that because the victim had manifested no stress symptoms during the three years leading up to the trial, the evidence of a sudden suicide attempt just before trial could not be tied to her molestation experiences. We disagree.

Bradberry does not contest that to show the "excessive physical or mental pain" needed for a cruelty to children conviction under OCGA § 16-5-70 (b), the State could submit evidence of mental stress experienced by the victim as a result of Bradberry's actions in molesting the victim. Rather, Bradberry's complaint is that too much time had passed since the incidents to allow a jury to infer that the attempted suicide resulted from stress caused by the incidents. This, of course, was a matter for the jury to resolve. Indeed, other cases have noted children's suppressed or delayed reactions to abuse, where the children at issue exhibited no overt manifestations of stress for quite some time after the abuse. See, e.g., *Hall v. State*;[15] *Sims v. State*.[16] We discern no error here in admitting evidence of the attempted suicide to show that the victim experienced excessive mental pain from the molestation events.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED MAY 4, 2009 ■

*Pate & Brody, Bernard S. Brody*, for appellant.

---

[13] *Dunn v. State*, 292 Ga. App. 667, 671 (1) (665 SE2d 377) (2008).
[14] *United States v. Burgos*, 539 F3d 641, 644 (III) (A), n. 2 (7th Cir. 2008).
[15] *Hall v. State*, 261 Ga. 778, 781-782 (7) (a) (415 SE2d 158) (1991).
[16] *Sims v. State*, 234 Ga. App. 678, 680 (1) (a) (507 SE2d 845) (1998).

*James B. Smith, District Attorney, Amy M. Carter, Robin R. Riggs, Assistant District Attorneys*, for appellee.