## A09A2181. ENGLAND v. THE STATE.

(689 SE2d 833)

BLACKBURN, Presiding Judge.

Following a jury trial, Christopher England was convicted on one count of driving with an unlawful alcohol concentration (DUI per se),[1] one count of driving under the influence of alcohol to the extent that it was less safe for him to drive (DUI less safe),[2] and failure to operate his vehicle within a single lane.[3] He appeals the two DUI convictions, arguing that the trial court erred in admitting the results of a State-administered blood test because (1) he requested an independent chemical test and was not granted one, and (2) he was denied his Sixth Amendment right to confront a lab technician, who assisted the State's toxicology expert in conducting the State's

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-391 (a) (1).

[3] OCGA § 40-6-48 (1).

blood test. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*,[4] the evidence shows that in the early morning hours of September 22, 2007, a law enforcement officer saw the truck that England was driving cross over the road's fog line and, consequently, turned his patrol vehicle around to follow. After observing England's truck cross over the fog line a second time, the officer initiated a traffic stop. Upon asking England for his driver's license, the officer smelled an alcoholic beverage odor and noticed that England's eyes were red. Thereafter, the officer had England exit his truck and perform several field sobriety tests, including the horizontal gaze nystagmus test, the walk and turn test, and the one-legged turn test, all of which indicated to the officer that England was under the influence of alcohol. The officer then asked England if he would submit to an alco-sensor test, to which England responded that he preferred a blood test. When the officer told England that he could not conduct such a test at that time because England was not under arrest and because the officer did not have the means to draw blood by the side of the road, England submitted to the alco-sensor test, and his breath tested positive for alcohol.

Based on the positive alco-sensor result and England's performance of the field sobriety tests, the officer arrested him for DUI. Immediately after placing England under arrest, the officer read England the appropriate implied consent notice pursuant to OCGA § 40-5-67.1 (b) (2). As he concluded reading the notice to England, the officer asked, "Will you submit to the State-administered chemical tests of your breath under the implied consent law?" England responded that he had concerns about the accuracy of the breath test and stated that he would rather submit to a blood test. Consequently, the officer re-read the implied consent notice to England but concluded by asking him if he would submit to the State-administered chemical tests of his blood. England agreed, and thereafter, the officer transported him to a local hospital where his blood was drawn by a registered nurse.

England was charged, via accusation, with one count of DUI per se, one count of DUI less safe, and failure to operate his vehicle within a single lane. Prior to trial, England filed a motion in limine to exclude the blood test from evidence, arguing that the test was actually his independent blood test based on the fact that the hospital later billed him for the test and that he paid the bill. At the start of his trial, England reiterated this argument and further argued that if the test was not his independent blood test, then his

---

[4] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

right to an independent test was wrongfully denied. Finding that England had not requested an independent chemical test, the trial court denied his motion.

At England's trial, the officer who arrested England testified regarding the encounter, and a videotape of the entire traffic stop was played for the jury. The nurse who drew England's blood also testified. In addition, a Georgia Bureau of Investigation (GBI) toxicologist, who tested England's blood sample, testified that England's blood-alcohol concentration at the time his blood was drawn was 0.143 grams per 100 milliliters. At the trial's conclusion, the jury found England guilty on all counts of the accusation. The DUI less safe count was merged into the DUI per se count, and he received a 24-month sentence. Thereafter, England filed a motion for new trial, which the trial court denied. This appeal followed.

1. England contends that the trial court erred in denying his motion to exclude the results of the State-administered blood test from evidence because he requested an independent blood test, which was not granted. We disagree.

A trial court's findings of fact when ruling on a motion to suppress or a motion in limine to exclude evidence should not be disturbed by a reviewing court if there is any evidence to support them. *Thomas v. State*.[5] The trial court's application of the law to undisputed facts when ruling on such motions is subject to de novo appellate review. *Vansant v. State*.[6]

"OCGA § 40-6-392 (a) (3) provides that a person who is accused of DUI and who undergoes a chemical test at the request of a law enforcement officer has the right to have a qualified person of [his] own choosing administer an additional test." *Ladow v. State*.[7] "[A]n accused's right to have an independent test *performed* does not attach until the State performs its test, but the right to *request* an independent test may be exercised when the accused is read [his] informed consent rights." (Punctuation omitted; emphasis in original.) Id. at 729. In this regard, we have held that

> [a]n accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed — in light of the circumstances — to be an expression of a desire for an additional, independent test. In adhering to this principle, we are guided by the circumstances surrounding an alleged

---

[5] *Thomas v. State*, 294 Ga. App. 108 (668 SE2d 540) (2008).
[6] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[7] *Ladow v. State*, 256 Ga. App. 726, 728 (569 SE2d 572) (2002).

request, not simply the semantics of the alleged request itself.

(Footnote omitted.) *State v. Gillaspy*.[8] "If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against [him] unless the failure to obtain the test is justified." (Punctuation omitted.) *Ladow*, supra, 256 Ga. App. at 728.

Here, England first mentioned that he wanted a blood test when the officer asked him to submit to the alco-sensor test. After the officer read England the implied consent notice and asked him if he would submit to the State-administered chemical tests of his breath, England responded that he had concerns about the accuracy of the breath test and stated that he would rather submit to a blood test. Consequently, the officer re-read the implied consent notice and asked England if he would submit to the State-administered tests of his blood, to which England agreed. At no point did England request another, independent test of his blood. Given these circumstances, we find that England was not requesting an independent blood test but was requesting that the officer designate a blood test, rather than a breath test, as the State-administered chemical test. See *Brooks v. State*;[9] *Anderton v. State*;[10] *Gillaspy*, supra, 270 Ga. App. at 114.

In so ruling, we find the circumstances in this matter to be distinct from those in *Ladow*, supra, in which we reversed a trial court's denial of a motion to suppress the State-administered test. In *Ladow*, the defendant interrupted the officer during the reading of the implied consent warning and stated, "I want a blood test." Supra, 256 Ga. App. at 727. Thus, not only was the wording different, but the statement was independently made and not in response to a request for a consent to a breath test. Although England argues that his initial stated preference for a blood test when the officer asked him to submit to the alco-sensor test was independently made and therefore analogous to the circumstances in *Ladow*, we hold that evidence supported the trial court's finding that this request, which was made after England was asked to submit to another form of breath test, was merely additional evidence of his intent to designate the type of test that the State would administer. Accordingly, the trial court did not err in denying England's motion to exclude the State-administered blood test from evidence.

2. England contends that the trial court erred in allowing a GBI

---

[8] *State v. Gillaspy*, 270 Ga. App. 111, 112 (605 SE2d 835) (2004).

[9] *Brooks v. State*, 285 Ga. App. 624, 627 (647 SE2d 328) (2007).

[10] *Anderton v. State*, 283 Ga. App. 493, 494 (1) (642 SE2d 137) (2007).

toxicologist to testify regarding the results of the State-administered blood test. Specifically, he complains that a lab technician, who assisted the toxicologist in conducting that test, did not testify at trial, and that therefore he was denied his right of confrontation under the Sixth Amendment of the United States Constitution, applicable to the States through the Fourteenth Amendment. In *Crawford v. Washington*,[11] the United States Supreme Court held that the Sixth Amendment prohibits the admission of testimonial statements of witnesses absent from trial unless both (i) the declarant is unavailable and (ii) the defendant has had a prior opportunity to cross-examine. This rule applies even if the testimony meets an exception to the hearsay rule. Id. at 61 (V). We discern no violation of England's constitutional rights.

At trial, the GBI toxicologist testified that he analyzed one sample of England's blood for alcohol content, using a headspace gas chromatograph and that a lab technician performed the exact same procedure on a second replicate sample of England's blood. The toxicologist testified that the reason for this second test was to ensure accuracy, stating that if the test on the replicate sample indicated a blood-alcohol content that was more than a three and a half percent difference from the initial sample, the result would be deemed invalid and the sample would have to be re-tested and re-analyzed. The toxicologist further testified that if the two samples differed by three and a half percent or less, then he would use the average of the two tests to calculate the blood-alcohol content. The toxicologist ultimately testified that in this matter the two samples were valid, and the tests indicated that England's blood-alcohol content was 0.143 grams per 100 milliliters.

England argues that because the lab technician did not testify, he was deprived of his right to confrontation and cross-examination as to her actions. However, the testimony of the lab technician in this matter was not required to protect England's constitutional right of confrontation. The toxicologist testified that in analyzing blood samples for blood-alcohol content, the lab technician "just takes a specimen of the blood, places it in a glass vial and seals it up." He also testified that it is his responsibility to program the chromatograph for both blood samples and to analyze the data to create the final report. Indeed, the toxicologist further testified that the lab technician never looks at the data, does not approve the data, and does not approve the controls.

In *Dunn v. State*[12] and *Bradberry v. State*,[13] we held that

---

[11] *Crawford v. Washington*, 541 U. S. 36, 59 (IV) (124 SC 1354, 158 LE2d 177) (2004).

[12] *Dunn v. State*, 292 Ga. App. 667, 671 (1) (665 SE2d 377) (2008).

[13] *Bradberry v. State*, 297 Ga. App. 679, 683 (2) (678 SE2d 131) (2009).

technicians who prepare samples for testing by the testifying expert need not themselves testify so as to preserve a defendant's right to confrontation, as "this is an issue affecting the reliability and weight of the evidence, not its admissibility." Here, as in *Dunn* and *Bradberry*, no conclusions from the lab technician were submitted to the jury, and thus, England's constitutional concerns are without merit. See *Bradberry*, supra, 297 Ga. App. at 682-683 (2); *Dunn*, supra, 292 Ga. App. at 670-671 (1). Cf. *United States v. Burgos*.[14] Accordingly, the trial court did not err in allowing the toxicologist to testify regarding the results of the State-administered blood test.

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED DECEMBER 2, 2009 —
RECONSIDERATION DENIED JANUARY 12, 2010 — 

*Banks & Stubbs, Rafe Banks III*, for appellant.
*Leslie C. Abernathy, Solicitor-General, Amy M. Radley, Assistant Solicitor-General*, for appellee.

---

[14] *United States v. Burgos*, 539 F3d 641, 644 (II) (A), n. 2 (7th Cir. 2008).