**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 14, 2019**

# In the Court of Appeals of Georgia

A19A0276. SIGERFOOS v. THE STATE.

GOBEIL, Judge.

Following a stipulated bench trial, the State Court of Douglas County convicted Brian R. Sigerfoos of driving under the influence of alcohol under OCGA § 40-6-391 (A) (5) and speeding under OCGA § 40-6-181. On appeal, Sigerfoos contends that the trial court erred by denying his motion to suppress the results of the state-administered blood test because (1) the arresting officer failed to provide him with the independent test of his choice as required by Georgia's Implied Consent statute, OCGA § 40-5-67.1; and (2) the arresting officer coerced him to submit to the blood test. We disagree and hereby affirm the trial court's decision.

In criminal cases, we have long recognized that a trial court's findings of fact when ruling on a motion to suppress or exclude evidence should not be disturbed

upon appellate review as long as any evidence exists to support the trial court's findings. *Thomas v. State*, 294 Ga. App. 108, 108 (668 SE2d 540) (2008). Thus, we are required to construe the record in the light most favorable to the trial court's factual findings. *MacMaster v. State*, 344 Ga. App. 222, 223 (1) (809 SE2d 478) (2018). We review de novo the trial court's application of the law to the facts. *England v. State*, 302 Ga. App. 12, 14 (1) (689 SE2d 833) (2009).

Viewed in this light, the record shows that on December 15, 2016, Sigerfoos was pulled over for swerving and speeding by Douglas County Sheriff's Deputy Mathew Atkins. During the traffic stop, Deputy Atkins suspected Sigerfoos of driving under the influence of alcohol ("DUI"). Specifically, Deputy Atkins noticed an odor of alcohol coming from the car and that Sigerfoos's pupils were dilated. When Deputy Atkins asked Sigerfoos if he had consumed alcohol, Sigerfoos stated that he consumed about four or five beers while playing at a music show earlier that evening. Sigerfoos also told the Deputy that he suffered from a herniated disc in his back and that he had taken Naproxen and a muscle relaxer earlier in the day. Deputy Atkins then attempted to conduct a Breathalyzer test, but Sigerfoos refused the test.

Deputy Atkins then placed Sigerfoos under arrest, read Georgia's Implied Consent statute[1] to Sigerfoos, and asked him to submit to a state-administered blood test. Sigerfoos stated "No, I'll do a breath test," and Deputy Atkins stated that he was no longer asking for a breath test, but instead was requesting a blood test. Sigerfoos stated that he did not want to submit to a blood test. Deputy Atkins informed Sigerfoos that if he refused the blood test, he would be placed in a holding cell while the Deputy applied for a search warrant for Sigerfoos's blood. Sigerfoos responded, "so if I say no, then you're going to take [my blood] anyway?" Deputy Atkins

---

[1] Deputy Atkins informed Sigerfoos as follows:

Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs. If you refuse this testing, your Georgia driver's license or privilege to drive on the highways of this state will be suspended for a minimum period of one year. Your refusal to submit to the required testing may be offered into evidence against you at trial. If you submit to testing and the results indicate an alcohol concentration of 0.08 grams or more, your Georgia driver's license or privilege to drive on the highways of this state may be suspended for a minimum period of one year. After first submitting to the required state tests, you are entitled to additional chemical tests of your blood, breath, urine, or other bodily substances at your own expense and from qualified personnel of your own choosing. Will you submit to the state administered chemical tests of your blood under the implied consent law?

3

explained that if Sigerfoos refused the blood test, Deputy Atkins would apply for a search warrant and only take his blood if a judge found probable cause and approved the warrant. But, if the judge did not approve the warrant, Deputy Atkins would not take his blood. Deputy Atkins told Sigerfoos that he did not know what decision the judge would make, and was merely informing Sigerfoos as to the possible outcomes.

Deputy Atkins told Sigerfoos that he was not trying to threaten or coerce him, and reiterated that the decision regarding whether to submit to the blood test was "totally up to [Sigerfoos];" "[the test is] voluntary;" and he was "allowed to say no." Sigerfoos stated that he would like to be able to keep his license. Deputy Atkins informed Sigerfoos that he could not explain the statute and that he did not know "what they'll do in court, that's up to them, but right now your license won't get suspended if you go along with the [testing]." Sigerfoos responded, "I'll go along with it if my license won't get suspended, that way I can at least continue to go to work." Deputy Atkins reiterated, "if you do the voluntary blood draw, then I don't send anything in for your license to get suspended today." Sigerfoos stated, "Alright, then I'll do that, that way I can at least continue to work."

Upon agreeing to the blood test, Sigerfoos confirmed to Deputy Atkins that he did not feel threatened or coerced into giving his consent. After the blood test was performed, Sigerfoos never asked for an additional test.

1. Sigerfoos contends that the trial court erred in denying his motion to suppress the results of the state-administered blood test because Deputy Atkins failed to provide him with the additional independent test of his choice as required under OCGA § 40-5-67.1.

Georgia's Implied Consent statute requires an individual of age 21 or over who is suspected of driving under the influence to submit to state-administered chemical tests of his blood, breath, urine, or other bodily substances for the purpose of determining if he is under the influence of alcohol or drugs. OCGA § 40-5-67.1 (b) (2). The state-administered test "shall be administered as soon as possible at the request of a law enforcement officer having reasonable grounds to believe that the person has been driving [under the influece of alcohol, drugs, or toxic vapor]." OCGA § 40-5-67.1 (a). "The requesting law enforcement officer shall designate which test or tests shall be administered initially and may subsequently require a test or tests of any [bodily] substances not initially tested." OCGA § 40-5-67.1 (a). After submitting to the State's requested tests, the individual is entitled to

5

additional chemical tests of his blood, breath, urine, or other bodily substances at his own expense and from qualified personnel of his choosing. OCGA § 40-5-67.1 (b) (2).

"An accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed–in light of the circumstances–to be an expression of a desire for an additional, independent test." *Waterman v. State*, 299 Ga. App. 630, 631 (683 SE2d 164) (2009) (citation and punctuation omitted). We also have held that an arrested party's statement regarding the type of test that he would like administered – when made in response to an officer's question as to whether the accused will submit to a certain type of state-administered test – did not qualify as a request for an independent test. See *England*, 302 Ga. App. at 14 (1). Such a statement instead was found to be an attempt to indicate which type of test the arrested party wanted the State to administer. Id.; see also *Anderton v. State*, 283 Ga. App. 493, 494 (1) (642 SE2d 137) (2007) (defendant's statement "I will take a blood test" was not a request for an independent chemical test, but rather a response to the officer's request and an attempt to designate which test would be administered by the State); *Brooks v. State*, 285 Ga. App. 624, 626-27 (647 SE2d 328) (2007) (defendant's question of whether

6

he had to take a breath or blood test in response to officer's questions indicated that defendant was referring to the type of test the State was going to administer).

Sigerfoos contends that our prior holdings in *Ladow v. State*, 256 Ga. App. 726, 729 (569 SE2d 572) (2002) and *Johnson v. State*, 261 Ga. App. 633, 637 (583 SE2d 489) (2003), require us to find that his statements to Deputy Atkins were a request for an additional, independent test. However, those cases are distinguishable. In *Ladow*, the defendant's statement, "I want a blood test," was not made in response to the officer's request for consent for a particular type of test, unlike the case at hand. *Ladow*, 256 Ga. App. at 727. Instead, the defendant interrupted the officer while he was reading the implied consent warning, stating that she was already aware of her rights and unequivocally stating, "I want a blood test." Id. We held, in *Ladow*, that under this unique set of factual circumstances, the officer reasonably should have understood the defendant's statements as a request for an independent test. Id. at 729.

Similarly, in *Johnson*, the defendant, upon being asked for a breath test, replied, "I'll take a urine test." *Johnson*, 261 Ga. App. at 634. The officer explained that, once the defendant submitted to the requested breath test, "he could take whatever test he wanted." Id. After consenting to the breath test, the defendant asked when he could take "my chemical test," and the officer indicated that the test would

7

be administered at the jail, but no additional test was ever performed. Id. We concluded that, under those circumstances, the defendant's statements clearly expressed a desire for an additional, independent test. Id. at 637 (2).

There are no similar comparisons in this case. Here, when Deputy Atkins read Sigerfoos the Implied Consent warning and asked whether Sigerfoos would submit to a blood test, Sigerfoos responded "No, I'll do a breath test. This response was made directly to Deputy Atkins's request for Sigerfoos's consent to a state-administered blood test. Viewed in context of the circumstances and his colloquy with Deputy Atkins, Sigerfoos's statement was not a request for an independent test, but rather an attempt to designate which test he wanted the State to administer.

2. Sigerfoos contends that the trial court erred by failing to suppress the blood test results because Deputy Atkins coerced him into submitting to the blood test. More specifically, Sigerfoos claims that Deputy Atkins coerced him by falsely informing Sigerfoos that his license would not be suspended and threatening to transport him to jail while he applied for a warrant. We find no such error in the trial court's failure to suppress the test results on this ground.

"The determinative issue with the implied consent notice is whether the notice given was substantively accurate so as to permit the driver to make an informed

decision about whether to consent to testing." *Anderton*, 283 Ga. App. at 496 (2) (citation and punctuation omitted). In instances where the officer properly gives the implied consent notice, justice requires suppression of the acquired evidence only when the "officer gives additional, deceptively misleading information that impairs a defendant's ability to make an informed decision about whether to submit to testing." Id. (citation and punctuation omitted).

Here, the record reflects that Deputy Atkins accurately read the Implied Consent statute to Sigerfoos. Contrary to Sigerfoos's argument, Deputy Atkins never stated that Sigerfoos's license would not ever be suspended if he complied. Rather, Deputy Atkins accurately stated that, if Sigerfoos voluntarily submitted to the requested test, his license would not be suspended immediately. Deputy Atkins further clarified that he did not know what the court would ultimately do, and that it would be up to the court whether Sigerfoos's license would actually be suspended at a later date.

We also find nothing inherently coercive or threatening with regard to Deputy Atkins's statements that, if Sigerfoos refused to comply, Sigerfoos would be placed in jail while the deputy applied for a warrant. While these statements may have served as a factor in Sigerfoos's ultimate decision to consent to a blood test, the statements

were merely a true and informative description of what would happen if Sigerfoos refused the required testing. *Anderton*, 283 Ga. App. at 496 (2) (no misleading occurred where an officer's statement to driver after reading the Implied Consent notice was simply a true and accurate statement regarding the Implied Consent process). Moreover, Deputy Atkins reiterated that the decision to submit to testing was solely Sigerfoos's, it was voluntary, and that Sigerfoos had the right to say no. There is nothing in the record that indicates that Sigerfoos's consent was involuntary. Accordingly, the trial court did not err in denying Sigerfoos's motion to suppress the results from the state-administered blood test.

*Judgment affirmed. Dillard, C. J., and Hodges, J., concur*.