### A09A0825. WATERMAN v. THE STATE.
(683 SE2d 164)

MILLER, Chief Judge.

Following a bench trial on stipulated facts, Daniel P. Waterman was convicted of driving under the influence of alcohol to the extent that he was a less safe driver (OCGA § 40-6-391 (a) (1)), driving under the influence of alcohol, per se (OCGA § 40-6-391 (a) (5)), and speeding (OCGA § 40-6-181). Waterman appeals from the judgment of conviction, arguing that the trial court erred in denying his motion to suppress the results of a state-administered blood alcohol content test because Waterman requested, but was not given, an independent test, as required by OCGA § 40-6-392 (a) (3). Finding that Waterman did not request an independent test, we affirm.

"Where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." (Citation and punctuation omitted.) *Collins v. State*, 290 Ga. App. 418 (659 SE2d 818) (2008).

The record shows that on December 9, 2007, Georgia State Patrol Trooper Nathan Truitt observed a Chevrolet Malibu, driven by Waterman, traveling in excess of the 35 mile-per-hour speed limit. After determining by radar that the vehicle's speed was 47 miles per hour, Truitt turned his vehicle around to initiate a traffic stop. As he approached the Malibu from the rear, he saw the vehicle swerve into the central turning lane and then back into its previous lane of travel. Once he pulled the vehicle over, Truitt approached the driver's side door to speak with Waterman. While standing at the driver's side door, Truitt detected the odor of alcoholic beverages.

Truitt asked Waterman to step to the rear of the vehicle. In response to Truitt's inquiries, Waterman admitted that he had had two mixed drinks containing vodka and a vodka shot and had stopped drinking forty-five minutes or an hour earlier. While Truitt spoke to Waterman at the rear of the vehicle, Waterman was swaying from side to side. Waterman agreed to perform an alco-sensor test and tested positive for alcohol.[1] Truitt performed horizontal gaze nystagmus (HGN) on Waterman. At the time, Waterman's eyes were

---

[1] The videotape of the incident indicates that Waterman had to perform the test three times to get a valid result.

glassy, and his pupils were dilated. During the HGN, Waterman exhibited signs of intoxication. Throughout his investigation, Truitt noticed that Waterman's speech was slurred.

Truitt arrested Waterman for driving under the influence. After he was placed under arrest, Waterman asked Truitt, "is there any way I can blow again?" Truitt replied, "I'm going to talk to you about that in just a minute." As Truitt was escorting Waterman into the back of his patrol vehicle, Waterman asked three times, "please let me blow again." Truitt said that he was going to give Waterman that opportunity, "but I've got to read you something first." Truitt then read Waterman the Georgia implied consent notice for drivers over the age of 21.[2] When Truitt asked Waterman if he would consent to a state-administered chemical test of his breath, Waterman replied, "yes, sir." Approximately seven minutes later, Waterman asked Truitt, "am I going to have the opportunity to blow again?" Truitt replied, "yeah, down at the jail you are." Truitt transported Waterman to the Spalding County Sheriff's Office, where Waterman took an Intoxilyzer 5000 test, which showed a blood alcohol content of 0.100 grams.

"OCGA § 40-6-392 (a) (3) provides that a person who is accused of DUI and who undergoes a chemical test at the request of a law enforcement officer has the right to have a qualified person of his own choosing administer an additional test." *McGinn v. State*, 268 Ga. App. 450, 451 (602 SE2d 209) (2004); *Johnson v. State*, 261 Ga. App. 633, 636 (2) (583 SE2d 489) (2003). "If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against him unless the failure to obtain the test is justified." (Punctuation and footnote omitted.) Id.

> An accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed — in light of the circumstances — to be an expression of a desire for an additional, independent test. In adhering to this principle, we are guided by the circumstances surrounding an alleged request, not simply the semantics of the alleged request itself.

*Anderton v. State*, 283 Ga. App. 493, 494 (1) (642 SE2d 137) (2007); see also *Brooks v. State*, 285 Ga. App. 624, 627 (647 SE2d 328) (2007). Waterman argues that he invoked his right to an independent test,

---

[2] See OCGA § 40-5-67.1 (b) (2).

when, some seven minutes after Truitt had read him the implied consent notice, he asked "am I going to have the opportunity to blow again?" We are not persuaded.

At the motion to suppress hearing, Waterman, in response to his counsel's questions about his understanding of his rights to a blood or breath test, testified:

> At the time, I initially thought that the breathalyser that he gave me there on the side of the road was the breathalyser, the only one I would take. So therefore, I was asking, you know, to — to take it again so — you know, 'cause I had just got finished eating, my, you know, blood alcohol content level would decrease, you know, and I just wanted to be able to prove that.

Subsequently, in response to his counsel's further questions, Waterman testified that Truitt had advised him of his right to an independent test; he wanted a breath test of his own; and he had requested the same. On cross-examination, however, Waterman admitted that, at the time, he did not know there was a difference between an independent test and the State's test and that he was satisfied when Truitt told him he could blow down at the station. Waterman testified that he just wanted to receive another breath test, and "[i]t didn't matter whether it was mine or the State's, I wanted another breathalyser test, 'cause I felt that the blood alcohol content would go down. At that time, I did not — I did not know that there were two separate tests."

Waterman's own testimony, taken as a whole, indicates that he did not intend to request an independent test. Although he was advised of his right to an independent chemical test, he stated that he did not know the difference between an independent and State-administered test or care who administered the test. See *Anderton*, supra, 283 Ga. App. at 495 (1) (relying on defendant's acknowledged indifference as to whether his blood test was performed by the State or independently in concluding that defendant did not request independent test). In light of all the circumstances, Waterman's question in the patrol car about whether he would have the opportunity to blow again is best construed as an attempt to confirm that he was going to have an opportunity to take another breath test, administered by the State, in hopes that his blood alcohol content would fall sufficiently prior to the test such that he would somehow be able to evade driving under the influence charges. Under all the circumstances and in light of Waterman's testimony, the trial court did not err in concluding that Truitt should not have reasonably construed Waterman's question, "am I going to have the opportunity

to blow again?" as a request for an independent chemical test. Accordingly, the trial court did not err in denying Waterman's motion to suppress.

For the reasons set forth above, we affirm the trial court's judgment.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED AUGUST 7, 2009.

*Larkin M. Lee*, for appellant.
*Newton & Howell, Griffin E. Howell III*, for appellee.