**SECOND DIVISION
MILLER, P. J.,
BRANCH, J., and PETERSON, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 11, 2016**

# In the Court of Appeals of Georgia

A15A1783. FARMER v. THE STATE.

MILLER, Presiding Judge.

Following a stipulated bench trial, Frances Farmer was convicted of DUI - per se (OCGA § 40-6-391 (a) (5)) and failure to maintain lane (OCGA § 40-6-48).[1] Farmer appeals, contending that the trial court erred in denying her motion to suppress the results of a State-designated breath test because she was not given an independent chemical test. After a review of the case, we affirm.

"On appellate review of a ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application

---

[1] Farmer was also found guilty of DUI - less safe (OCGA § 40-6-391 (a) (1)), however, the trial court merged Farmer's less safe conviction into her DUI - per se conviction. Additionally, the State nolle prossed Farmer's charges for reckless driving (OCGA § 40-6-390) and misdemeanor obstruction. (OCGA § 16-10-24).

of the law to undisputed facts is subject to de novo review." (Citation omitted.) *State v. Walker*, 295 Ga. 888, n.1 (764 SE2d 804) (2014); see also *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

So viewed, the evidence shows that in January 2014, Farmer drove her Ford F-150 off the road and crashed into a tree in Rockdale County. The two passengers in Farmer's vehicle were injured and transported to the hospital. At the time of the collision, Farmer was employed as a Deputy Sheriff for the Rockdale County Sheriff's Department.

About 30 minutes after the accident, a Georgia State Trooper arrived on the scene and spoke with the responding Rockdale County deputies who were investigating the accident. Upon his arrival, the trooper found Farmer sitting in the back of a county patrol car so that she could stay warm because it was very cold outside. Farmer was not handcuffed, and when the trooper asked Farmer if she was under arrest, Farmer said she was not.

The trooper observed a strong odor of alcohol coming from Farmer's breath and person and noticed that her eyes were watery. The trooper had Farmer perform the HGN test and he had her blow into a portable Alco-Sensor. Farmer tested positive

for alcohol on the Alco-Sensor test and she exhibited all six clues on the HGN test.[2]
Based on the trooper's observation of Farmer, as well as his training, knowledge and
experience, the trooper determined that Farmer was under the influence of alcohol to
the extent that she was less safe to drive.

The trooper then placed Farmer under arrest for DUI and read her the Georgia
Implied Consent notice. The trooper asked Farmer if she was willing to submit to a
chemical test of her breath. Farmer responded by saying that she would take a urine
test. The trooper then explained that he was asking her to submit to a breath test and
Farmer agreed to submit to the designated test.

At that point, in order to make sure there was no confusion, the trooper asked
Farmer if she was requesting an independent test. Farmer responded that the breath
test was fine because she was "screwed either way." After making that comment,
Farmer gave no further response. Farmer did not request an independent test at any
time during the encounter.

The trooper subsequently conducted an Intoxilyzer 5000 test to determine the
alcohol concentration of Farmer's breath. The first sample showed an alcohol

---

[2] The trooper did not ask Farmer to perform the walk and turn test because she indicated that she was on leave from her job for a knee injury. Farmer also told the trooper that she was taking ibuprofen and oxycodone for her injury.

3

concentration of .171 and the second sample showed an alcohol concentration of .180.

In her sole enumeration of error, Farmer contends that the trial court erred in denying her motion to suppress her State-administered breath test. We do not agree.

> OCGA § 40-6-392 (a) (3) provides that a person who is accused of DUI and who undergoes a chemical test at the request of a law enforcement officer has the right to have a qualified person of his own choosing administer an additional test. If an individual requests an independent test but is unable to obtain it, the results of the State-administered test cannot be used by the State as evidence against him unless the failure to obtain the test is justified. An accused's right to have an additional, independent chemical test administered is invoked by some statement that reasonably could be construed . . . to be an expression of a desire for an additional, independent test.

(Citations and punctuation omitted.) *Waterman v. State*, 299 Ga. App. 630, 631 (683 SE2d 164) (2009). In adhering to this principle, we look to the circumstances surrounding Farmer's comments about a urine test, not simply the semantics of her words, and we do not view those comments in isolation. See *Brooks v. State*, 285 Ga. App. 624, 627 (647 SE2d 328) (2007).

Here, when the trooper asked Farmer if she was willing to submit to a breath test under the Implied Consent Law, she initially responded by saying that she would

4

take a urine test. The trooper then explained that he was asking Farmer to submit to a breath test and she told him that she would submit to the designated test.

Farmer never requested an independent test of her urine, blood, or breath. Moreover, when Farmer told the trooper that she would take a urine test, she was requesting that the trooper designate a urine test, rather than a breath test, as the State-administered chemical test. See *Anderton v. State*, 283 Ga. App. 493, 494-495 (1) (642 SE2d 137) (2007) (defendant's statement that "I will take a blood test" was a request that the officer designate a blood test, not a request for an independent test); *England v. State*, 302 Ga. App. 12, 15 (1) (689 SE2d 833) (2009) (defendant's statement that he had concerns about accuracy of breath test and would rather submit to a blood test was a request for a designated blood test, not a request for an independent test).

Clearly in this case, the circumstances are distinct from those in *McGinn v. State*, 268 Ga. App. 450, 452 (602 SE2d 209) (2004), upon which Farmer relies. In *McGinn*, this Court reversed the denial of the defendant's motion to suppress where the defendant expressly requested an independent blood test and re-initiated the discussion about the independent test while waiting to take the State-administered breath test. See *McGinn*, supra, 268 Ga. at 451-452. The defendant's statements in

5

*McGinn*, unlike Farmer's, were independently made and were not made in response to the officer's request for consent to a State-administered breath test. See id.

In denying Farmer's motion to suppress, the trial court expressly found that Farmer declined an independent urine test and this factual finding is supported by record evidence. Accordingly, the trial court did not err in denying Farmer's motion to suppress.

*Judgment affirmed. Branch and Peterson, JJ., concur.*