312 Ga. 632
FINAL COPY

S20G1339.  THE STATE v. HENRY.

Bethel, Justice.

Georgia law allows the results of chemical tests performed on the blood, urine, breath, or other bodily substances of persons accused of driving under the influence of alcohol, drugs, or other substances in violation of OCGA § 40-6-391 to be admitted into evidence. See OCGA § 40-6-392 (a). When such tests are performed at the behest of the State, OCGA § 40-6-392 (a) (3) provides that a suspect "may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." Where an additional, independent chemical test is requested but not given, the law allows for the State's test to remain generally admissible as evidence against the driver where the failure to secure the independent test is "justifiable." OCGA § 40-6-392 (a) (3).

When this case was before the Court of Appeals, the State argued that Kemar Henry failed to make a request for additional, independent chemical testing. In *Ladow v. State*, 256 Ga. App. 726 (569 SE2d 572) (2002), the Court of Appeals stated that a request for additional testing has been lawfully asserted when a suspect has made some statement that "reasonably could be construed, in light of the circumstances, to be an expression of a desire for such test." Id. at 728. Citing *Ladow*, the Court of Appeals in this case applied the "reasonably could" standard in the context of evaluating a claim of ineffective assistance of counsel predicated on counsel's failure to object to the admission of a blood test conducted by the Georgia Bureau of Investigation (GBI) where the State allegedly failed to honor Henry's request for independent chemical testing. See *Henry v. State*, 355 Ga. App. 217, 219-222 (2) (843 SE2d 884) (2020). In its analysis, the Court of Appeals held that Henry's statements met the "reasonably could" standard. See id. at 221.

We granted certiorari to consider whether the Court of Appeals has set forth the proper standard for determining when a person

2

accused of driving under the influence has invoked his or her right to additional, independent chemical testing under OCGA § 40-6-392 (a) (3). As explained below, because we are unpersuaded that the standard established by the Court of Appeals for making this determination is consistent with the text and context of the statute, we reject it in favor of a "reasonably would" standard and overrule *Ladow* and all other decisions of the Court of Appeals that have applied the "reasonably could" standard. Accordingly, we reverse the Court of Appeals' judgment here and remand this case for further proceedings in light of the standard outlined below.

1. The Court of Appeals summarized the facts relevant to this appeal as follows:

> [O]n the night of June 17, 2017, Henry was pulled over by a Georgia State Patrol trooper. The trooper observed Henry's vehicle with its bright lights on driving in the opposite direction from the trooper. When the trooper made contact with Henry, his eyes were bloodshot and watery, and his speech was slurred, though the trooper did not detect any smell of alcohol. Henry agreed to the trooper's request to perform field sobriety testing. Henry demonstrated four clues of impairment on the horizontal gaze nystagmus test, three clues of impairment on the walk and turn test, and two clues of

3

impairment on the one-leg stand test. After several unsuccessful attempts to obtain a reading on the alco-sensor, Henry finally provided an adequate sample which registered positive for alcohol.

At that time, Henry was placed under arrest for driving under the influence of alcohol. The officer read Henry the age-appropriate implied consent notice, after which Henry asked the officer "[s]o you're gonna let me do the breathalyzer one more time?" The trooper responded that "[w]e're past that bridge. We're past it." The trooper read Henry the implied consent notice again, after which Henry said "so you are saying I can take, my blood, my blood, my doctor can do my blood test and all that?" The trooper responded to Henry's question by stating, "I need a yes or a no right now. I did not ask anything about your doctor. I said the State. Yes or no." Henry's response on the dash camera video is inaudible. The trooper then asked Henry "[i]s that a yes?," and Henry's response is again inaudible on the dash camera video. Although it is not discernible on the video, the trooper testified that Henry consented to a blood test in a soft voice.

Henry's blood was drawn at the jail, and testing performed by the GBI concluded that Henry's blood alcohol concentration was 0.085 grams per 100 milliliters of blood, with a variance, or margin of error, of plus or minus 0.004. Henry was charged by accusation of driving under the influence of alcohol per se, driving under the influence of alcohol to the extent he was less safe, failure to maintain a lane, and failure to dim headlights. Prior to trial, Henry's counsel secured an order to obtain additional independent testing of Henry's blood, but no additional testing was performed. Henry was convicted of driving under the influence per se and failure to dim lights, and he was acquitted of driving under the influence to the extent he was less safe and failure to

4

maintain lane. Henry timely filed a motion for new trial, which the trial court denied following an evidentiary hearing.

*Henry*, 355 Ga. App. at 217-218.

Henry appealed the trial court's denial of his motion for new trial to the Court of Appeals, arguing, among other things, that his counsel had provided constitutionally ineffective assistance by failing to object to the admission of the blood test performed by the GBI because Henry had been denied his right to independent chemical testing upon request. Relying on the "reasonably could" standard set forth in *Ladow*, the Court of Appeals reversed the trial court's denial of the motion for new trial, agreeing that Henry's trial counsel was ineffective for failing to object to the introduction of the blood test result on the basis that Henry was denied the independent testing he requested. See *Henry*, 355 Ga. App. at 220 (2). We granted the State's petition for certiorari to review the standard set forth in *Ladow*.

2. In its analysis of Henry's ineffective assistance claim, the Court of Appeals held that his trial counsel performed deficiently by

failing to file a motion to suppress the blood test results and that Henry was prejudiced because admission of the blood test results allowed the State to establish that Henry was driving under the influence. See *Henry*, 355 Ga. App. at 221-222 (2). See also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984) (to prevail on a claim of ineffective assistance of counsel, the defendant must show that his counsel's performance was professionally deficient and that he was prejudiced as a result — that is, that but for the deficiency, there is a reasonable probability of a more favorable outcome at trial). The court further held that it could not "revisit" the "reasonably could" standard established by *Ladow* because the standard "was in place at the time of Henry's trial, and thus it is the standard which governs our analysis about the reasonableness of trial counsel's performance." *Henry*, 355 Ga. App. at 221 (2) n.5.

It is true that trial counsel cannot be judged *deficient* for failing to either attempt to change or anticipate changes in the law. See *Esprit v. State*, 305 Ga. 429, 438 (826 SE2d 7) (2019) ("A criminal

6

defense attorney does not perform deficiently when he fails to advance a legal theory that would require an extension of existing precedents and the adoption of an unproven theory of law." (citation and punctuation omitted)); *Rhoden v. State*, 303 Ga. 482, 486 (813 SE2d 375) (2018) ("[T]here is no requirement for an attorney to prognosticate future law in order to render effective representation . . . . Counsel is not obligated to argue beyond existing precedent." (citations and punctuation omitted)). However, a defendant is not normally *prejudiced* by his lawyer's failure to pursue a legal argument that appeared to have merit at the time but is later determined to be meritless due to a subsequent change or development in the law. See *Lockhart v. Fretwell*, 506 U. S. 364, 372 (113 SCt 838, 122 LE2d 180) (1993); see also *Hillman v. Johnson*, 297 Ga. 609, 614 (2) (b) (774 SE2d 615) (2015) (petitioner cannot show *Strickland* prejudice from counsel's failure to challenge sentences based on Court of Appeals cases later determined to be incorrect). Instead, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance

renders the result of the trial unreliable or the proceeding fundamentally unfair[,]" and "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, the Court of Appeals erred in holding that it could not reconsider its *Ladow* standard in this case, and the fact that the State asked this Court to overrule *Ladow* and its progeny in the context of an ineffective assistance of counsel claim does not bar us from doing so.

3. We turn now to the question of whether *Ladow*'s "reasonably could" standard is proper.

(a) Our analysis of the *Ladow* standard begins by reviewing the text of the statutes applicable to this case. Driving under the influence of drugs, alcohol, and certain other substances is generally prohibited under OCGA § 40-6-391. OCGA § 40-6-392 (a) provides that

> [u]pon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person in violation of Code Section 40-

8

6-391, evidence of the amount of alcohol or drug in a person's blood, urine, breath, or other bodily substance at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath, or other bodily substance shall be admissible. . . .

Thus, OCGA § 40-6-392 (a) creates a general rule of admissibility for the sort of tests it identifies. A separate paragraph of that Code section provides for independent testing at the option of a suspect. Under paragraph (a) (3), a person who is subjected to chemical testing by the State

may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer. The justifiable failure or inability to obtain an additional test shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer[.]

This paragraph provides for additional, independent chemical testing, but it further provides that even when an additional test is not conducted, evidence from a test performed at the behest of the State shall not be excluded where the failure or inability to obtain an additional test was "justifiable." The statute therefore indicates

9

a strong preference for the admissibility of the state-administered chemical test.

In this case, the State has argued that Henry failed to make a request for independent testing, suggesting that the officer did not understand such a request had been made. The question before us, then, is whether the State's failure to obtain additional testing for this reason was "justifiable."

In determining whether the State's failure to obtain additional, independent chemical testing was indeed "justifiable," we look first to the plain language of the statute and consider it in accordance with its original public meaning. "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). That presumption means that

> we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) Id. at 172-173 (1) (a).

While the term "justifiable" is not explicitly defined in OCGA § 40-6-392 (a) (3), the context of the statute's language makes clear that the "justifiable failure or inability to obtain an additional test" refers to the officer's failure or inability to obtain the additional test, not the defendant's. Thus, it is the officer's conduct that must be justified in order for the State's test to be admissible.

As commonly understood at the time the statute was passed by the General Assembly in 1983,[1] "justifiable" meant "capable of being justified" — that is, excusable, in the sense of having a good and lawful reason. See Webster's Ninth New Collegiate Dictionary 656 (9th ed. 1983) (defining "justifiable" as "capable of being justified," and defining "justified" in this context as "to show to have had sufficient legal reason"); The American Heritage Dictionary 695 (2d College ed. 1982) (defining "justifiable" as "capable of being justified," and defining "justified" in this context as "to demonstrate

---

[1] See Ga. L. 1983, p. 1000, § 14.

11

a good reason for (an action taken)"). See also *Sandifer v. U.S. Steel Corp.*, 571 U. S. 220, 227-228 (III) (A) (134 SCt 870, 187 LE2d 729) (2014) (noting that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" at the time the legislature enacted a statute and that reviewing dictionaries from the era of the statute's enactment may assist in determining its meaning (citation and punctuation omitted)).

While there may be various excuses or reasons that could justify a law enforcement officer's failure or inability to obtain additional, independent chemical testing, the only relevant excuse at issue here is a law enforcement officer's explanation that the officer did not understand that the defendant wanted such testing. When a reasonable officer would understand that a suspect has requested an additional, independent chemical test but ignores that request, that failure is not justifiable. But when a reasonable officer would not understand that a suspect has made a request for additional, independent chemical testing, the failure to obtain such

testing is justifiable. An officer does not unjustifiably fail to obtain an additional, independent chemical test when a suspect makes only an unclear, ambiguous, or equivocal statement that could have been, with the benefit of hindsight, interpreted as a request for additional testing. See, e.g., *Wright v. State*, 338 Ga. App. 216, 227 (789 SE2d 424) (2016) (Peterson, J., concurring). Whether a clear request was made is determined by examining the words used by the suspect, the context of the conversation between the officer and the suspect regarding chemical testing, and other circumstances relevant to whether or not the suspect expressed a desire for such testing.

(b) Our view of what is justifiable in this context is similar to the evaluation of how clearly a suspect must invoke his or her right to counsel during a custodial interview. A suspect's request for counsel must be made "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney" in order for the suspect to invoke his or her Fifth Amendment right to counsel during a custodial interrogation

following the giving of *Miranda* warnings.[2] *Davis v. United States*, 512 U. S. 452, 459 (II) (114 SCt 2350, 129 LE2d 362) (1994). In those circumstances, the court considers whether the suspect made a request clearly and unambiguously so as to avoid "transform[ing] the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity[.]" (Citation and punctuation omitted.) Id. at 460 (II). As we have stated before, the bright-line rule also is more easily "applied by officers in the real world" without hampering their legitimate law enforcement activity. (Punctuation omitted.) *Green v. State*, 291 Ga. 287, 292 (4) (728 SE2d 668) (2012) (quoting *Davis*, 512 U. S. at 461 (II)).

(c) In *Ladow*, the Court of Appeals stated that a suspect invokes his "right to have an additional, independent chemical test or tests administered" when he or she makes "some statement that *reasonably could* be construed, in light of the circumstances, to be an expression of a desire for such test." (Emphasis supplied.) 256

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

Ga. App. at 728. The Court of Appeals went on to conclude that the suspect's statement at issue in that case "sufficiently articulated her desire to have an additional, independent test such that a law enforcement officer *reasonably would* have understood her statement to be a request for one." (Emphasis supplied.) Id. at 729. Later Court of Appeals cases disregarded the concluding language in *Ladow* and instead focused on the earlier "reasonably could" language from *Ladow* in determining whether additional, independent chemical testing had been requested. See *Sigerfoos v. State*, 350 Ga. App. 450, 452-453 (1) (829 SE2d 666) (2019); *Wright*, 338 Ga. App. at 221 (1) (b); *Farmer v. State*, 335 Ga. App. 679, 680-682 (782 SE2d 786) (2016); *Avery v. State*, 311 Ga. App. 595, 595-599 (1) (716 SE2d 729) (2011); *England v. State*, 302 Ga. App. 12, 14-15 (1) (689 SE2d 833) (2009); *Waterman v. State*, 299 Ga. App. 630, 631-633 (683 SE2d 164) (2009); *Mathis v. State*, 298 Ga. App. 817, 818 (1) (681 SE2d 179) (2009); *Fowler v. State*, 294 Ga. App. 864, 865-866 (1) (a) (670 SE2d 448) (2008); *Collins v. State*, 290 Ga. App. 418, 420-421 (2) (659 SE2d 818) (2008); *Brooks v. State*, 285

Ga. App. 624, 626-628 (647 SE2d 328) (2007); *Anderton v. State*, 283 Ga. App. 493, 494-495 (1) (642 SE2d 137) (2007); *State v. Gillaspy*, 270 Ga. App. 111, 112-113 (605 SE2d 835) (2004); *Johnson v. State*, 261 Ga. App. 633, 636-637 (2) (583 SE2d 489) (2003).[3] But the phrase "reasonably could" from *Ladow* was not anchored in the text of OCGA § 40-6-392 (a) (3) or the case law on which it relied.

In developing what has now been labeled as the *Ladow* standard, the Court of Appeals relied on *Church v. State*, 210 Ga. App. 670, 671 (1) (436 SE2d 809) (1993). However, that case does not contain any language resembling the "reasonably could" standard. In *Church*, during field sobriety tests following a DUI stop and before the officer read the implied consent notice, the defendant stated, "If you were going to arrest me would you take like a blood test; still you would put me in jail and I would still go to jail for DUI,

---

[3] The earlier cases focused on the "reasonably could" language without explanation. The Court of Appeals in *Wright* noted the "reasonably would" language employed in *Ladow*'s conclusion and acknowledged that it was "unclear" whether the "reasonably could" standard was part of *Ladow*'s holding. 338 Ga. App. at 221. However, the court ultimately concluded that it was bound by the subsequent cases applying the "reasonably could" standard. See id.

16

right?" Id. at 671. After the officer administered a second alco-sensor test and read the implied consent warnings to the defendant, he arrested the defendant. After the officer advised the defendant of her right to an independent test, the defendant responded "it won't matter and you know that." Id. The Court of Appeals concluded that her questions and statements regarding a blood test did not constitute a request for an independent test because she was clarifying the procedure that would be followed if she was arrested. See id. The court did not delineate what, if any, standard it used to determine that the defendant's statement was not a request for an independent test, but concluded, quoting *Magher v. State*, 199 Ga. App. 508, 508 (1) (405 SE2d 327) (1991), that the defendant "did not effectively communicate to the officers any desire for an additional test[.]" (Punctuation omitted.) *Church*, 210 Ga. App. at 671.

Like *Church*, however, *Magher* does not include any language resembling the *Ladow* standard. In *Magher*, the Court of Appeals ruled in favor of the State as to whether the defendant had requested an independent test, and similarly concluded that the

17

trial court did not err in finding that the defendant "did not effectively communicate to the officers any desire for an additional test." *Magher*, 199 Ga. App. at 508 (1). Thus, it is not clear how the standard announced in *Ladow* was based on the Court of Appeals' decisions in *Church* and *Magher*.

(d) Nothing in *Ladow* and its progeny undermines our analysis of the proper standard for determining if an officer's failure to obtain an additional, independent chemical test was "justifiable." We therefore reject the "reasonably could" standard set forth by the Court of Appeals in *Ladow*, and we overrule *Ladow* and all other decisions of the Court of Appeals holding that a suspect's right to an additional, independent test is invoked by a statement to a law enforcement officer that "reasonably could" — rather than "reasonably would" — be construed as an expression of a request for such a test, including the cases cited in Division 3 (c) above. Because Henry's claim of ineffective assistance of counsel was considered by the Court of Appeals under the wrong standard, we reverse the judgment of the Court of Appeals and remand this case for

reconsideration of the ineffective assistance of counsel claim under the proper standard and for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. All the Justices concur.*

Decided October 19, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 217.

*Jefferson F. Upchurch, Assistant Solicitor-General*, for appellant.

*George C. Creal, Jr.*, for appellee.

*Omeeka P. Loggins, Solicitor-General; Robert W. Smith, Jr., Gilbert A. Crosby*, amici curiae (appellant).

*Greg A. Willis; Hunter J. Rodgers; Clark & Towne, David E. Clark; Kimberly A. Dymecki*, amici curiae (appellee).