**THIRD DIVISION**
**DOYLE, P. J.,**
**MCFADDEN, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 15, 2022**

# In the Court of Appeals of Georgia

A20A0501. HENRY v. STATE.

HODGES, Judge.

This case is back before this Court after having been remanded by the Supreme Court of Georgia. *State v. Henry*, 312 Ga. 632 (864 SE2d 415) (2021) ("*Henry II*"). After F. Bryant Henry was convicted for driving under the influence per se and failure to dim lights, he appealed the denial of his motion for new trial. This Court previously reversed that denial on the ground that Henry's trial counsel was ineffective for failing to seek to suppress the results of his State-administered blood test on the basis that he was not provided the opportunity to independently test his blood. *Henry v. State*, 355 Ga. App. 217, 222 (2) (843 SE2d 884) (2020) (*Henry I*). Our holding was rooted in the law at the time of Henry's trial, which provided that "[a]n accused's right to have an additional, independent chemical test or tests

administered is invoked by some statement that *reasonably could* be construed, in light of the circumstances, to be an expression of a desire for such test." (Emphasis supplied.) *Ladow v. State*, 256 Ga. App. 726, 728 (569 SE2d 572) (2002). Our opinion held that, regardless of the propriety of the standard espoused by *Ladow* and its progeny, it was the law at the time of Henry's trial and it was the standard by which we would judge the reasonableness of Henry's counsel's actions. *Henry I*, 355 Ga. App. at 221 (2), n. 5.

The Supreme Court disagreed, finding that Henry could not be prejudiced by his counsel's deficiency if the law which counsel failed to invoke was unsound. *Henry II*, 312 Ga. at 635 (2) (finding that trial counsel cannot be found deficient for failing to anticipate changes in the law, but holding that the issue of prejudice "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair, and unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.") (citation and punctuation omitted). The Supreme Court then found *Ladow* and its progeny to be unsound and, as discussed further below, reversed that body of case law and the "reasonably could" standard they utilized. Id. at 639-640 (3) (c) - (d). The

2

Supreme Court reversed our opinion, and remanded the case back to this Court for reconsideration in light of this change in the law. Id. at 640 (3) (d). Upon reconsideration on remand, we affirm the trial court's denial of Henry's motion for new trial.

In *Henry II* the Supreme Court adopted this Court's recitation of the facts of this case, which are as follows:

> On the night of June 17, 2017, Henry was pulled over by a Georgia State Patrol trooper. The trooper observed Henry's vehicle with its bright lights on driving in the opposite direction from the trooper. When the trooper made contact with Henry, his eyes were bloodshot and watery, and his speech was slurred, though the trooper did not detect any smell of alcohol. Henry agreed to the trooper's request to perform field sobriety testing. Henry demonstrated four clues of impairment on the horizontal gaze nystagmus test, three clues of impairment on the walk and turn test, and two clues of impairment on the one-leg stand test. After several unsuccessful attempts to obtain a reading on the alco-sensor, Henry finally provided an adequate sample which registered positive for alcohol.
>
> At that time, Henry was placed under arrest for driving under the influence of alcohol. The officer read Henry the age-appropriate implied consent notice, after which Henry asked the officer "[s]o you're gonna let me do the breathalyzer one more time?" The trooper responded that "[w]e're past that bridge. We're past it." The trooper read Henry the

3

implied consent notice again, after which Henry said "so you are saying I can take, my blood, my blood, my doctor can do my blood test and all that?" The trooper responded to Henry's question by stating, "I need a yes or a no right now. I did not ask anything about your doctor. I said the State. Yes or no." Henry's response on the dash camera video is inaudible. The trooper then asked Henry "[i]s that a yes?" and Henry's response is again inaudible on the dash camera video. Although it is not discernible on the video, the trooper testified that Henry consented to a blood test in a soft voice.

Henry's blood was drawn at the jail, and testing performed by the GBI concluded that Henry's blood alcohol concentration was 0.085 grams per 100 milliliters of blood, with a variance, or margin of error, of plus or minus 0.004. Henry was charged by accusation of driving under the influence of alcohol per se, driving under the influence of alcohol to the extent he was less safe, failure to maintain a lane, and failure to dim headlights. Prior to trial, Henry's counsel secured an order to obtain additional independent testing of Henry's blood, but no additional testing was performed. Henry was convicted of driving under the influence per se and failure to dim lights, and he was acquitted of driving under the influence to the extent he was less safe and failure to maintain lane. Henry timely filed a motion for new trial, which the trial court denied following an evidentiary hearing. He then appealed.

(Punctuation omitted.) 312 Ga. at 633-634 (1).

4

Henry argues that his trial counsel was ineffective in several regards, which we will address in turn.[1] When this Court reviews a ruling on a claim of ineffective assistance of counsel

> we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness.

(Citations and punctuation omitted.) *Thrasher v. State*, 300 Ga. App. 154 (684 SE2d 318) (2009).

### a. Request for Independent Chemical Testing

As *Henry II* acknowledged,

> Georgia law allows the results of chemical tests performed on the blood, urine, breath, or other bodily substances of persons accused of driving

---

[1] Henry also argued that OCGA § 40-6-392 is unconstitutional because it violates his right to confront his accusers, so he originally filed his appeal in the Supreme Court. The Supreme Court found this enumeration waived, and thus decided it did not have original appellate jurisdiction over the appeal. Accordingly, the Supreme Court transferred the case to this Court for issuance of an opinion in *Henry I.*

5

under the influence of alcohol, drugs, or other substances in violation of OCGA § 40-6-391 to be admitted into evidence. See OCGA § 40-6-392 (a). When such tests are performed at the behest of the State, OCGA § 40-6-392 (a) (3) provides that a suspect "may have a physician or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer." Where an additional, independent chemical test is requested but not given, the law allows for the State's test to remain generally admissible as evidence against the driver where the failure to secure the independent test is "justifiable." OCGA § 40-6-392 (a) (3).

312 Ga. at 632.

At the time of Henry's trial, the law provided that "[a]n accused's right to have an additional, independent chemical test or tests administered is invoked by some statement that *reasonably could* be construed, in light of the circumstances, to be an expression of a desire for such test." (Emphasis supplied.) *Ladow*, 256 Ga. App. at 728. As we recited in *Henry I*, "after Henry was read the implied consent notice and asked to consent to a blood test for the second time, he asked the trooper, 'so you are saying I can take, my blood, my blood, my doctor can do my blood test and all that?' The trooper responded to Henry's question by stating, 'I need a yes or a no right now. I did not ask anything about your doctor. I said the State. Yes or no.'" 355 Ga. App.

6

at 221 (2). Relying on *Ladow* and other cases following it, we found this statement ambiguous and thus held that it "reasonably could" have been a request for independent chemical testing. See id. at 220-221 (2). Accordingly, we found that Henry's trial counsel was ineffective for failing to move to suppress the blood result because he made a strong showing that such a motion would have been granted. Id. at 222 (2).

On certiorari, the Supreme Court found the reasoning of *Ladow* and its progeny unsound. It held

> [w]hile the term "justifiable" is not explicitly defined in OCGA § 40-6-392 (a) (3), the context of the statute's language makes clear that the "justifiable failure or inability to obtain an additional test" refers to the officer's failure or inability to obtain the additional test, not the defendant's. Thus, it is the officer's conduct that must be justified in order for the State's test to be admissible. . . . While there may be various excuses or reasons that could justify a law enforcement officer's failure or inability to obtain additional, independent chemical testing, the only relevant excuse at issue here is a law enforcement officer's explanation that the officer did not understand that the defendant wanted such testing. *When a reasonable officer would understand* that a suspect has requested an additional, independent chemical test but ignores that request, that failure is not justifiable. *But when a reasonable officer would not understand* that a suspect has made a request for additional, independent chemical testing, the failure to obtain such testing is

7

justifiable. An officer does not unjustifiably fail to obtain an additional, independent chemical test when a suspect makes only an unclear, ambiguous, or equivocal statement that could have been, with the benefit of hindsight, interpreted as a request for additional testing. Whether a clear request was made is determined by examining the words used by the suspect, the context of the conversation between the officer and the suspect regarding chemical testing, and other circumstances relevant to whether or not the suspect expressed a desire for such testing.

(Citation omitted; emphasis supplied) *Henry II*, 312 Ga. at 637 (3) (a). As a result, the Supreme Court

reject[ed] the "reasonably could" standard set forth by the Court of Appeals in *Ladow*, and [it] overrule[d] *Ladow* and all other decisions of the Court of Appeals holding that a suspect's right to an additional, independent test is invoked by a statement to a law enforcement officer that "reasonably could" – rather than "reasonably would" – be construed as an expression of a request for such a test . . . .

Id. at 640 (3) (d).

The Supreme Court instructed us to reconsider our holding in light of *Henry II*, and, in so doing we find that Henry's statement, though able to satisfy the previous "reasonably could" standard for the reasons outlined in *Henry I*, was too ambiguous to meet the more exacting "reasonably would" standard announced in *Henry II*. It is

8

unclear whether Henry was requesting that his doctor perform the State's test (which the law does not permit) or requesting that his doctor perform independent testing after the State-administered test (which the law does permit), or was simply confused about the testing protocol and seeking clarification. In other words, we find that a reasonable officer would not reasonably construe Henry's ambiguous statement to be a request for independent testing of his blood, so the trooper's failure to secure additional testing was justified. Accordingly, Henry's trial counsel was not ineffective for failing to file a motion to suppress which, judged under the correct "reasonably would" standard, would have been meritless. See, e.g., *State v. Walker*, 350 Ga. App. 168, 174 (2) (828 SE2d 402) (2019) ("it is not ineffective assistance of counsel to refrain from making a futile motion or filing a meritless motion to suppress.") (citation and punctuation omitted).

### b. Voluntary Consent

Henry also argues that his trial counsel was ineffective for failing to move to suppress the blood test result on the ground that it was obtained without a warrant or his voluntary consent. While it is undisputed that no warrant was obtained, we find Henry's argument about consent to be abandoned.

9

Henry correctly recites law providing that courts must examine the voluntariness of consent to a blood test under the totality of the circumstances. See e. g. *Williams v. State*, 296 Ga. 817, 823 (771 SE2d 373) (2015). Henry fails to articulate, however, anything involuntary about the consent he provided to the blood test. He identifies nothing about his condition or the officer's conduct to support this enumeration. "[I]t is not this Court's role to speculate about the legal basis for an appellant's argument. Nor is it the function of this Court to cull the record on behalf of a party in search of instances of error. Therefore, inasmuch as [Henry] fails to present any meaningful argument in support of this enumeration, it is deemed abandoned." (Citations and punctuation omitted.) *Santoro v. State*, 361 Ga. App. 546, 548 (1) (864 SE2d 719) (2021); Court of Appeals Rule 25 (c) (2).

### c. Securing Additional Test of Blood

In the trial court, Henry's initial trial counsel secured an order to permit independent testing of Henry's blood held by the GBI, given that the GBI's testing placed Henry's blood alcohol concentration ("BAC") at only slightly above the legal limit when considering the testing's margin of error. According to initial counsel's testimony, despite this court order, the GBI created some procedural barriers to having the blood transmitted to an independent lab for further testing. Initial counsel

10

testified that he made a strategic decision not to push back against the GBI to obtain the blood sample because he believed there was a good chance additional testing would come back with the same or higher BAC. He believed Henry's defense was stronger if he could argue that the GBI failed to assist further testing because it had something to hide rather than actually obtaining the test results.

Henry subsequently fired initial counsel and hired new trial counsel. This attorney testified that he did not pursue additional testing because he was informed that initial counsel received a letter from the GBI stating that the blood was too old to re-test. Initial counsel denied receiving such a letter.

With regard to Henry's initial counsel, the decision not to pursue additional testing of the blood was clearly a strategic one.

> [T]here is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential. The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. In determining what constitutes ineffective assistance, a critical distinction is made between inadequate preparation

11

and unwise choices of trial tactics and strategy. Particularly in regard to matters of trial strategy and tactic, effectiveness is not judged by hindsight or result. Indeed, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citations and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188, 192-193 (4) (825 SE2d 578) (2019). We do not find that it was patently unreasonable for initial counsel not to pursue testing which could have further inculpated Henry; thus, we do not find his representation ineffective.

With regard to Henry's subsequent trial counsel, even assuming he based his decision not to pursue additional blood testing on a mistaken belief that the blood was too old to re-test as opposed to reasoned strategy, Henry cannot demonstrate prejudice. "[P]rejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A 'reasonable probability' is defined as a probability sufficient to undermine confidence in the outcome." (Citation omitted.) *Green v. State*, 358 Ga. App. 843, 852-853 (7) (856 SE2d 427) (2021). Here, not only is it pure speculation that the results of additional blood testing would have been exculpatory, as explained above, it is also

12

possible that they would have been inculpatory. Accordingly, Henry cannot demonstrate a reasonable probability that the result of the trial would have been different if his blood were re-tested.

### d. Obtaining the Crime Lab Testing Data

"A person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended[.]" OCGA § 40-6-391 (a) (5). The summary toxicology report indicated that Henry's BAC was .085 grams per 100 ml with a variance of +/– .004. According to the forensic toxicologist, the variance is a summation of the variability of every step of the process of testing the blood. She further testified that, statistically, if the test were run 100 times, 99 of those times the test results would be within the .004 variance. Here, that would mean that she expected that 99 out of 100 tests of Henry's blood would put his BAC between .081 and .089. The blood is actually tested by the GBI two times.

At trial, the forensic toxicologist testified that every week the instruments which perform the BAC analysis are tuned. Each day they also run a sample with a known concentration of alcohol at the beginning and end of the testing to ensure that

the instrument is working accurately throughout the day's testing. She testified that the instrument used to test Henry's blood was working on the day of his test.

Henry's trial counsel did not subpoena the more detailed testing data from the GBI. After reviewing those records, post-conviction counsel examined the forensic toxicologist at the motion for new trial hearing. There she testified that she performed two tests on Henry's blood sample, with the first registering a BAC of .0842 and the second a .0849. The GBI's policy is to round the results to three decimal places for the report. On the day of testing Henry's sample, control samples with known quantities of alcohol were tested to ensure the instrument was working accurately. The first control sample measured .0005 higher than the known level of alcohol and the second control sample measured .0002 higher than the known level. Henry's post-conviction counsel tried to get the toxicologist to agree that, as a result, Henry's result could have registered as much as .0005 higher than it really was. The toxicologist testified, however, that the difference between the known sample and its recorded reading was within the expected results and that testing the actual blood samples twice ensures that the results are accurate.

Henry argues that his trial counsel was ineffective for failing to obtain this more detailed report because if the lower test number of .00842 was used, and a

14

downward deviation of .004 was applied for the margin of error, and then .0005 was subtracted from that due to the result of one of the control samples, Henry's BAC would have been below the legal limit. Henry, however, did not provide any testimony that this would be an appropriate way to analyze the data. Indeed, the only expert testimony provided was from the forensic toxicologist, who refused to adopt this approach and never agreed that it was possible that Henry's BAC was below .08. At trial and at the motion for new trial hearing, she never wavered in her confidence about the results presented in the report, and this testimony was unrebutted. Accordingly, Henry has not demonstrated that he was prejudiced by the failure to obtain this more detailed testing data. See *Green*, 358 Ga. App. at 852-853 (7).

In summary, upon reconsideration on remand in light of *Henry II*, we hold that Henry has not demonstrated that his trial counsel was ineffective and, thus, the trial court did not err in denying his motion for new trial.

*Judgment affirmed. Doyle, P. J., and McFadden, P. J., concur*.